**Ex parte EDMEAD.**

District Court, D. Massachusetts. May 10 and June 11, 1928.

No. 3886.

1. **Aliens** ☞54(9)—**Evidence in deportation proceedings relative to alien's conviction for larceny held not to prove "moral turpitude."**

Evidence in deportation proceedings relative to alien's conviction for larceny on two different occasions *held* insufficient to prove "moral turpitude," which, as used in law with reference to crimes, refers to conduct which is inherently base, vile, or depraved, and contrary to accepted rules of morality.

[Ed. Notes.—For other definitions, see Words and Phrases, First and Second Series, Moral Turpitude.]

2. **Habeas corpus** ☞23—**District Court had jurisdiction in habeas corpus to determine alien's right to remain.**

District Court had jurisdiction, in habeas corpus proceedings by alien to obtain release, to determine right of alien to remain.

3. **Aliens** ☞54(10)—**Whether petty larceny involves moral turpitude is fact question, to be determined from circumstances of theft.**

It is a question of fact whether petty larceny involves moral turpitude, to be determined upon a consideration of the circumstances of the theft.

Habeas Corpus. Proceeding by Phyllis Edmead against the Commissioner of Immigration. Writ sustained.

John T. Lane, of Wayland, Mass., for petitioner.

John W. Schenck, of Boston, Mass., for respondent.

MORTON, District Judge. Habeas corpus to the Commissioner of Immigration to obtain the release of Phyllis Edmead, held for deportation on warrant proceedings.

Edmead entered the United States via Canada in April, 1924, coming from Montserrat, B. W. I. The deportation warrant against her was issued on November 22, 1927, upon the ground that she had within five years after her admittance to this country been convicted of a crime involving moral turpitude and sentenced to imprisonment for a term of one year or more. The case was submitted upon the record of the proceedings before the immigration tribunals; and the question is whether upon the facts found the order was justified as a matter of law.

Edmead is a young colored woman, born in 1904, or perhaps 1908—it is stated both ways. She worked as a domestic servant. In April, 1926, she was convicted of petty larceny and sentenced to three months in the House of Correction. Later in the same month she was arrested in deportation proceedings upon the ground that she was likely to become a public charge at the time of her entry in 1924. After hearings, that warrant was canceled by the Assistant Secretary. In June, 1926, she gave birth to an illegitimate child. In April, 1927, she was again arrested for larceny and sentenced to one year in jail.

There is no evidence about these larcenies except that given by the alien. She

says that on the first occasion she had taken to her own room some of her employer's clothing with the intention of stealing it, but was detected before carrying it away, and that it was the first time she had ever been arrested. Her baby was born during her imprisonment on the sentence for this crime. She testified that she had never had sexual relations except with the man who was the father of her child, that he promised to marry her, and that she believed he would do so if informed of her condition. As to the second larceny, she says that the complaining witness kept some of her baby's clothes, and that she (Edmead) took 95 cents "while she was looking at me," promising to repay it on getting work; that she never was arrested except for these two crimes.

The only ground of deportation now relied on is that Edmead has been convicted of a "crime involving moral turpitude." That the expression connotes something more than "illegal" or "criminal" is clear—law and morality are by no means identical. The best definition which I have found is Judge Walker's in Coykendall v. Skrmetta (C. C. A.) 22 F.(2d) 120: "The words 'involving moral turpitude,' as long used in the law with reference to crimes, refer to conduct which is inherently base, vile, or depraved, contrary to accepted rules of morality, whether it is or is not punishable as a crime. They do not refer to conduct which, before it was made punishable as a crime, was not generally regarded as morally wrong or corrupt, as offensive to the moral sense as ordinarily developed." 22 F.(2d) 120, 121.

Whether any particular conviction involves moral turpitude under this test may be a question of fact. Some crimes are of such character as necessarily to involve this element; others of which the punishment is quite as severe do not (see Ex parte Saraceno (C. C.) 182 F. 955); and still others might involve it or might not. As to this last class, the circumstances must be regarded to determine whether moral turpitude was shown. While there is authority that all larceny involves turpitude (see Re A. M. Henry, 15 Idaho, 755, 99 P. 1054, 21 L. R. A. (N. S.) 207), I am not prepared to agree that a boy who steals an apple from an orchard is guilty of "inherently base, vile, or depraved conduct." Where the larceny is petty, I think the circumstances must be inquired into.

[1] The evidence as it stands about the crimes for which Edmead was convicted does not seem to me to prove moral turpitude.

While she does not appear to be a very desirable citizen, she is not on that account to be denied her legal rights.

[2, 3] I find and rule that the hearing accorded to the petitioner by the immigration tribunals is not conclusive, because they proceeded upon a fundamental error of law. There is jurisdiction in these proceedings to determine the right to remain. Further evidence should be taken as to the circumstances surrounding Edmead's larcenies to determine whether they involved moral turpitude. As the question is essentially one of law, it will be better for this court to hear the case than to remit it to the immigration tribunals.

Case to stand for further hearing on question of discharge.

After hearing further testimony as to the circumstances of the larcenies, the court found that they did not involve moral turpitude and discharged the petitioner.