### PINO v. NICOLLS.
**Misc. Civ. No. 53-79.**

United States District Court
D. Massachusetts.

Feb. 1, 1954.

124

Paul T. Smith, Boston, Mass., for plaintiff.

Anthony Julian, U. S. Atty., Boston, Mass., by Jerome Medalie, Asst. U. S. Atty., Boston, Mass., for defendant.

McCARTHY, District Judge.

The petitioner, Anthony Pino, has come before this court on a petition for a writ of habeas corpus arising out of a deportation order predicated upon provisions of the Immigration and Nationality Act of 1952, with particular application to Section 241(a) (4), 8 U.S. C.A. § 1251(a) (4). This petitioner had been ordered deported upon the ground that he had been convicted after entering the United States of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct. He had exhausted his administrative remedies and then filed the instant petition for the issuance of the Great Writ contending that the state of a record in the Third District Court of Eastern Middlesex, Commonwealth of Massachusetts, did not satisfy the definition of a conviction and that his right to due process under the Fifth Amendment of the Constitution of the United States in the deportation proceedings was denied. This court issued the writ and the body of the petitioner was produced at the hearing.

The facts and circumstances surround a fifty-eight year old married alien who was born in Divieto, Messina, Italy, on May 7, 1907, and was admitted to the United States on May 28, 1908, for permanent residence. At that time he was accompanied by his mother, was a little over a year old, and from that time down to the present he has maintained a residence in the United States.

The deportation order is based upon a charge that in 1928 the petitioner was convicted of carnal abuse and that in 1949 he was convicted of the larceny of a dozen golf balls. The Court quotes from paragraph VI of the petition which reads in part: "The petitioner has not been convicted of the larceny of twelve golf balls since that case is presently pending in the Third District Court of Eastern Middlesex, Cambridge, Massachusetts, the case having been placed on file. If and when the petitioner is sentenced he will have a right of appeal to the Superior Court and to a trial de novo * * *."

It is the contention of the petitioner that in order to have a conviction within the meaning of the Immigration and Nationality Act there must be a sentence or final disposition, that there is no such status here because the case may be "taken from the file", sentence imposed, and an appeal taken to the Massachusetts Superior Court, thereby vacating the entire proceedings of the lower court and restoring the case to a "de novo" status.

The record shows, and I find it a fact, that on December 28, 1948, he was found guilty on a charge of stealing one dozen golf balls and was sentenced to a year in the House of Correction; he promptly appealed the decision of the lower court, posted a bond, and was bailed; then on December 28th, within the statutory time permitting a person to withdraw an appeal from a sentence, the appeal was withdrawn, a motion for a new trial was filed by the petitioner, and this motion was allowed. On January 4, 1949, there was a trial "de novo" on the same complaint and the petitioner was again found

guilty and was sentenced to a year in the House of Correction, from which an appeal was promptly taken; on January 28th this appeal was again withdrawn; the District Court judge re-imposed the sentence, then suspended it, and made an order to put this petitioner on probation with the sentence suspended until January 30, 1950, and on the latter date, when the period of probation expired, the sentence was revoked, and the case was placed on file. On February 3, 1953, a motion for a new trial was filed. That motion was taken under consideration by another judge of the District Court and at the time of the filing of this petition there had been no decision on the motion for a new trial.

■ Since the crime of larceny of which the petitioner is alleged to have been convicted occurred in the Commonwealth of Massachusetts, the Court must look to the law of Massachusetts for the purpose of determining whether or not the history of this case in the Third District Court reveals a conviction. United States ex rel. Freislinger v. Smith, 7 Cir., 41 F.2d 707.

In Commonwealth v. Gorham, 99 Mass. 420, the defendant in an arson case offered himself as a witness. The prosecutor, for the purpose of impeaching his credibility, offered in evidence an indictment for forgery and the court record which showed that the defendant had pleaded guilty, after which plea the indictment was placed on file, but which afterwards had been brought forward and was pending at the time of the trial of the defendant. Exceptions to the admission of this evidence were sustained and the court stated the following: "The term 'conviction' is used in at least two different senses in our statutes. In its most common use it signifies the finding of the jury that the prisoner is guilty; but it is very frequently used as implying a judgment and sentence of the court upon a verdict or confession of guilt. * * * We think * * * that the word 'conviction' is here (Gen.Sts. c. 131, § 13) used in the broader and less technical sense, and implies the judg-

ment of the court. * * *" 99 Mass. at page 422.

■ The landmark definition of the word "conviction", in Massachusetts law, is to be found in Commonwealth v. Lockwood, 109 Mass. 323, 325. The issue in this case was whether under the Constitution of the Commonwealth prohibiting the Governor from pardoning a defendant *until his conviction,* the executive and the council had acted prematurely in granting a pardon to a defendant who had been found guilty but as against whom no judgment had been made. The Court said: "The ordinary legal meaning of 'conviction', when used to designate a particular stage of a criminal prosecution triable by a jury, is the confession of the accused in open court, or the verdict returned against him by the jury, which ascertains and publishes the fact of his guilt; while 'judgment' or 'sentence' is the appropriate word to denote the action of the court before which the trial is had, declaring the consequences to the convict of the fact thus ascertained * * *." The pardon was, therefore, held to be valid.

The Supreme Judicial Court had occasion, in Commonwealth v. Kiley, 150 Mass. 325, 23 N.E. 55, to define the term "conviction" as used in St.1887, c. 392, which provided that " 'the conviction, by a court of competent jurisdiction, of a person licensed under the provisions of' " laws relating to licenses to sell intoxicating liquors would of itself make the person's license void. The court said, 150 Mass. at page 326, 23 N.E. at page 55, "Under this provision the effect of a conviction of the kind named is to deprive the defendant of a valuable right, without an opportunity for further trial or investigation. We are of opinion that nothing less than a final judgment, conclusively establishing guilt, will satisfy the meaning of the word 'conviction,' as here used. At any time before a final judgment of the court a motion in arrest of judgment may be made, or the verdict may be set aside upon a motion for a new trial on the ground of newly-dis-

covered evidence, or for other good cause; and, upon further proceedings, it may turn out that the defendant is not guilty." For the purpose of this statute, therefore, "conviction" meant more than a finding or confession of guilt.

In Munkley v. Hoyt, 179 Mass. 108, 60 N.E. 413, a petition was brought for a writ of certiorari to correct proceedings of the board of registration in pharmacy. It appeared that the petitioner had pleaded guilty to a complaint for the illegal sale of intoxicating liquor. On his motion, the court placed the complaint on file and took no further action. St.1896, c. 397, § 9, provided that the board of registration might after hearing suspend or revoke a pharmacist's registration for cause, but that the registration should not be suspended or revoked *for a cause punishable by law* until after conviction by a court of competent jurisdiction. Interpreting the statute, the court said that in 179 Mass. at page 111, 60 N.E. at page 414, "the plain purpose of the statute is that the hearing before the board shall be independent of any proceeding before any other court or tribunal, and that the decision of the board shall be upon the evidence produced there, and not elsewhere. The record of the conviction of the accused by a verdict of a jury is not admissible at the hearing as evidence of his guilt. It is true that proof of his confession in open court of his guilt would be admissible against him at the hearing just as any other admission of guilt made by him would be, wherever made, but not upon the ground that such confession is conviction, but that it is an admission. In no way is the judgment of the board upon the question of the guilt of the accused to be affected by the proceedings in another court." A conviction in a court of competent jurisdiction, therefore, was deemed to be a condition precedent to suspension or revocation of registration by the board, but the conviction was not to be considered as evidence upon which, in and of itself, the judgment of the board was to be predicated. The term "conviction" was given its ordinary legal meaning which, said the court, provided an independent hearing before each tribunal and independent action on the part of each.

■ A careful study of the foregoing decisions and of the others cited by both the petitioner and the respondent requires the conclusion that the record of the case involving the larceny of a dozen golf balls represents a conviction under Massachusetts law, for the primary reason that there need not be a sentence or final disposition in order for a conviction to be had.

In certain situations, as shown above, the technical requirements of statutes have engrafted upon the ordinary meaning of conviction the requirement of a sentence. Where, for example, one sought to use a record of "conviction" to impeach the credibility of a witness, Mass.G.L.(Ter.Ed.) c. 233, § 21, as interpreted by the Supreme Judicial Court, imported a sentence. Karasek v. Bockus, 293 Mass. 371, 199 N.E. 726; Attorney General v. Pelletier, 240 Mass. 264, 134 N.E. 407; City of Boston v. Santosuosso, 307 Mass. 302, 330, 30 N.E.2d 278. The definition in the Lockwood case, supra, however, controls ordinarily and, with respect to the so-called "impeachment statute", its wording has now been changed to define "conviction", when referring to a felony conviction at least, simply as "a plea of guilty or a finding or verdict of guilty".

■ The conclusion that the ordinary legal meaning of "conviction" is to be employed when the court is concerned with a construction of Title 8 U.S.C.A. § 1251(a) (4) is buttressed by the fact that Congress in 1952, when it amended this section of the deportation statute, eliminated the earlier requirement that imprisonment was a prerequisite to deportation. Congress is now concerned only with whether or not the alien had pleaded or been found guilty of two crimes involving moral turpitude.

There is a second phase of the petitioner's argument—the contention that since, on January 30, 1950 the Third District Court of Eastern Middlesex "revoked" the sentence which it had earlier imposed upon the petitioner and placed the case "on file", the case is restored to a posture where the court or the petitioner could reopen the case at any time, sentence might be imposed and an appeal might be taken to the Superior Court of Massachusetts, where a trial "de novo" could be had.

In this respect, the original court record is important, since it discloses that after a finding of guilty the petitioner was sentenced to a year in the House of Correction, the sentence was suspended to January 30, 1950, and, after the entire period of probation had been served, the original sentence was revoked and the case then placed on file.

█ There is statutory authority in the Commonwealth of Massachusetts for disposing of a criminal complaint by placing it on file. Mass.G.L.(Ter.Ed.) c. 218, § 38. The court may, furthermore, when a sentence of imprisonment is imposed, order execution of the sentence or, under the suspended sentence statute, G. L. c. 279, § 1, suspend the execution of the sentence and place the petitioner on probation. When, however, a sentence is suspended as in the instant case and the probationary period has been completed satisfactorily, the trial judge of the District Court of Eastern Middlesex had no authority to revoke the order suspending the sentence, place the case on file, and hold the threat of a sentence over a defendant's head forever. The district courts of Massachusetts have no power to keep a defendant on indefinite probation. Commonwealth v. Maloney, 145 Mass. 205, 13 N.E. 482.

The petitioner contends that a criminal case placed on file can be re-opened at any time and his attorney cites the cases of Commonwealth v. Dowdican's Bail, 115 Mass. 133, Marks v. Wentworth, 199 Mass. 44, 85 N.E. 81, and Commonwealth v. Carver, 224 Mass. 42, 112 N.E. 481. I have no quarrel with the law for the reason that in these three cases there never was an imposition of sentence.

This court is satisfied that under Massachusetts law the petitioner was convicted of larceny, which conviction satisfies the requirements of Section 241(a) (4) of the Immigration and Nationality Act of 1952.

██ The petitioner further asserts that the conduct of the proceedings upon which the order of deportation was predicated was in violation of his rights under the due process clause of the Fifth Amendment of the United States Constitution because the issuance of the warrant of arrest was irregular, since the application specified that the petitioner had been convicted of "assault with intent to rape and rape" and "larceny", whereas court records showed that the first conviction with which we are concerned was for carnal abuse of a female child. The special inquiry officer lodged the charge of carnal abuse. There is no necessity for a prolonged discussion of the merits of this claim. It is sufficient to note that the titular designation of Section 23 of Chapter 265 of the General Laws of Massachusetts is "Rape of child" and that "carnal knowledge" and "abuse" is contained in the language following the designation. While there may have been an error of description in the application for the warrant, it is not the purpose or intention of this court to examine, approve or disapprove of every step and ruling in the proceedings before the Special Inquiry Officer, for the simple reason that this is not the function of the Court. Berkman v. Tillinghast, 1 Cir., 58 F.2d 621, 623. Nevertheless, the Court has given considerable time and serious consideration to each of the charges lodged by the petitioner before arriving at the conclusion that there was no error committed by the officer so flagrant as to deny to Pino the essentially fair hearing which was due to him.

█ In passing it might be well to note a few of the petitioner's contentions

with respect to denial of procedural due process, without going too far into details. He claims that he was denied an opportunity to prepare his defense adequately, although the record shows a first notice of more than two weeks, and three periods of adjournment thereafter, which facts do not support the claim of lack of time. A "commingling of investigative, prosecutive and judicial functions on the part of the Special Inquiry Officer" is also charged. There is no evidence, however, that the officer exercised any investigative function. He may have carefully studied the file in the case, but certainly no one could contend that that constituted an investigation. It is inescapably clear also that this court cannot conclude that the officer had pre-judged the case.

Of more serious significance is the claim that the right of the petitioner was infringed by the introduction of a record of arrests and several convictions. This record was a lengthy one and noted some very serious charges which did not result in arrest, trial, or punishment. I am satisfied that this record should not have been introduced because of its highly incendiary character, but an examination of it discloses the fact that it was wholly unnecessary in reaching the conclusion that the petitioner had been convicted twice of crimes involving moral turpitude. It follows, therefore, that the introduction of this record did not render the proceeding unfair, especially in view of the fact that strict rules of evidence applicable in judicial proceedings do not obtain in deportation inquiries. Berkman v. Tillinghast, supra.

Finally, it was contended by the petitioner's counsel that the crimes for which Pino was convicted, assuming that he was convicted, do not necessarily involve the essential elements of moral turpitude. In connection with the conviction for carnal abuse, under Massachusetts General Laws, c. 265, § 23, this claim is without merit. This crime has been classified as so-called "statutory rape" the punishment for the commission of which could well have taken the form of a life sentence, and that it is an act of depravity in the private and social duties a man owes society in general cannot be doubted. Ng Sui Wing v. United States, 7 Cir., 46 F.2d 755. Bendel v. Nagle, 9 Cir., 17 F.2d 719. The basis for the deportation order for the second conviction is that which charges the larceny of a dozen golf balls.

It is inescapably clear that an act involving moral turpitude is an act of baseness or depravity contrary to accepted moral standards. While there may be a predilection that the theft of a dozen golf balls does not come within the purview from a moral point of view of this definition, this Court is bound to accept established precedents of courts of appellate jurisdiction. The ruling case in this circuit is Tillinghast v. Edmead, 1 Cir., 31 F.2d 81, 84, which affirms the principle that a conviction of petty larceny is the conviction of a crime involving moral turpitude. It is indisputably clear also under Massachusetts law that larceny of less than $100 is a misdemeanor. Although one may agree with the statement of Judge Anderson in his dissenting opinion in the Tillinghast case that "It seems to me monstrous to hold that a mother stealing a bottle of milk for her hungry child, or a foolish college student stealing a sign or a turkey, should be tainted as guilty of a crime of moral turpitude," such is the law not only in this circuit, but also in other circuits. It is the duty of a judge of a District Court of the United States to follow the law as it is beaconlighted by the decisions of courts of higher jurisdiction. The Court of Appeals for this circuit has spoken in the case of Tillinghast v. Edmead.

It is inescapably clear, therefore, that this writ must be and it is hereby ordered discharged.