Roni David **MARCIANO**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, Respondent.

No. 20581.

United States Court of Appeals, Eighth Circuit.

Sept. 8, 1971.

Eisele, District Judge, filed a dissenting opinion.

---

Bernard P. Becker, Legal Aid Society of Minneapolis, Minneapolis, Minn., for petitioner.

Judith H. Norris, Atty., Dept. of Justice, Civ. Div., Washington, D. C., Will Wilson, Asst. Atty. Gen., George W. Masterton, Atty., Dept. of Justice, Washington, D. C., for respondent; Daniel Bartlett, Jr., U. S. Atty., John A. Newton, Asst. U. S. Atty., of counsel.

Before MATTHES, Chief Judge, VAN OOSTERHOUT, Circuit Judge, and EISELE, District Judge.

VAN OOSTERHOUT, Circuit Judge.

Before us is a petition pursuant to § 106(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1105a(a), for review of the Board of Immigration Appeals' order of August 21, 1970, affirming the determination of the Special Inquiry Officer that the petitioner, Marciano, was convicted of a crime involving moral turpitude within the meaning of § 241(a) (4) of the Act, 8 U.S.C.A. § 1251(a) (4) and thus should be deported.

Section 1251(a)(4) provides:

"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

\* \* \* \* \* \*

(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial;
\* \* \*"

It is undisputed that petitioner is an alien born in Morocco on December 12, 1942, that he is a citizen of Morocco and Israel, and that he entered the United States on an immigration visa on January 20, 1967. Petitioner admits that he was convicted of statutory rape in violation of Minnesota Statutes Annot. § 609.-295(4), that he was sentenced to three-years imprisonment and that his conviction was affirmed by the Supreme Court of Minnesota on April 3, 1969. See State v. Marciano, 283 Minn. 200, 167 N.W.2d 41. He contends, however, that such conviction does not form a basis for deportation for the reasons hereinafter stated.

Petitioner contends that the deportation order should be set aside for the following reasons:

I. The phrase "crime involving moral turpitude" as used in 8 U.S.C.A. § 1251 (a)(4) is unconstitutionally vague on its face and thus violates the due process clause of the Fifth Amendment.

II. The State offense proscribed by Minnesota Statutes Annot. § 609.295(4) of which petitioner stands convicted is not a crime involving moral turpitude because the statute makes sexual relations with a female between sixteen and eighteen years of age a crime without any proof of criminal intent and a defense of reasonable mistake as to age is unavailable.

We find that the Board committed no error in the respects above charged or in any other respect and we affirm the deportation order.

### I.

■ Petitioner's first contention that the phrase "crime involving moral turpitude" as defined in the deportation statute lacks sufficient standards to justify deportation and is therefor unconstitutional for vagueness has been rejected by the Supreme Court in Jordon v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886. We are foreclosed by that decision from considering the constitutional issue urged. See Ramirez v. United States Immigration and Naturalization Service, 134 U.S.App.D.C. 131, 413 F.2d 405.

### II.

■ We are satisfied that petitioner's second contention to the effect that the statutory rape offense of which he was convicted is not a crime involving moral turpitude lacks merit. Minnesota Statutes Annot. § 609.295(4), the criminal statute under which petitioner was convicted, reads:

"Whoever has sexual intercourse with a female child under the age of 18 years and not his spouse may be sentenced as follows:

\* \* \* \* \* \*

(4) if the child is 16 years of age but under the age of 18 years and the offender is 21 years of age or older, by imprisonment for not more than three years."

Criminal intent is not made an element of the offense. Minnesota Statutes Annot. § 609.02 entitled "Definitions" at Subd. 9(6) provides:

"Criminal intent does not require proof of knowledge of the age of a minor even though age is a material element in the crime in question."

The Minnesota Supreme Court in State v. Morse, 281 Minn. 378, 161 N.W.2d 699, holds that criminal intent is not an element of an offense against a minor under the age of consent and that an honest belief of the accused that the victim had reached the age of consent when in fact she had not constitutes no defense. At the close of its opinion, the Court states:

"There may be cases where an application of Minn.St. 609.02, subd. 9 (6), leads to an unjust result. This is not one of them. In fact situations where the underage female is the aggressor and her male partner the real victim, it is likely that the good judgment of prosecutors and jurors will prevent a miscarriage of justice. \* \* \*" 161 N.W.2d 699, 703.

The Supreme Court of Minnesota in affirming Marciano's conviction noted that he had entered a plea of guilty and hence the facts in the case were not developed. The Court then observes that the defendant had called its attention to the portion of its *Morse* decision hereinabove quoted and in answer thereto states:

"The prosecutor and the trial judge were afforded no opportunity to conduct a more exhaustive hearing to determine whether the prosecution would lead to an unjust result of the kind suggested in the Morse case. As we there noted, circumstances may occur where the application of § 609.02, subd. 9(6), brings about a miscarriage of justice. In an aggravated case, it may violate defendant's constitutional rights. These are matters which should be ventilated at the trial court level by whatever postconviction proceedings are available to defendant. However, for us to suggest the procedure which should now be pursued by defendant, or what evidence might compel the court to grant relief would be inappropriate and premature. The judgment of conviction is accordingly affirmed." State v. Marciano, 283 Minn. 200, 167 N.W.2d 41, 42–43.

Marciano's conviction was affirmed upon the basis of *Morse*.

The record before us discloses that Marciano filed a petition for postconviction relief in the trial court and was afforded an evidentiary hearing. The trial court on July 1, 1970, filed a memorandum and findings of fact, conclusions of law, and order in which it determined Marciano's plea was voluntarily and intelligently made, that he was

represented by competent counsel, that he was fully aware of his constitutional rights, and that his plea of guilty was properly accepted. The court also found and determined that Marciano was told by his victim that she was fifteen or sixteen years of age prior to the commission of the offense, that the petitioner had sexual intercourse with the victim on the date charged, and that petitioner was the aggressor. The petition for postconviction relief was denied and dismissed. We find nothing in the record to indicate that an appeal was taken from such order. Thus upon the record before us, it would appear that petitioner's conviction was final and that a determination has been made by the state court that this was not the unusual type of case referred to in the quoted excerpts from the Minnesota court's *Morse* opinion which leads to an unjust result.

Federal courts have consistently held that statutory rape is a crime involving moral turpitude. Bendel v. Nagle, 9 Cir., 17 F.2d 719, 720; Pino v. Nicolls, D.C. Mass., 119 F.Supp. 122, 128, aff'd 1 Cir., 215 F.2d 237, 240, reversed on other grounds, per curiam opinion Pino v. Landon, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239; Ng Sui Wing v. United States, 7 Cir., 46 F.2d 755, 756; United States ex rel. Marks v. Esperdy, D.C., 203 F.Supp. 389, 396–397.[1] See Am.Jur. 2d Aliens and Citizens, § 80.

In Ng Sui Wing v. United States, supra, defendant's third contention was that statutory rape does not involve moral turpitude. In answer thereto the Court states:

"As to appellant's third contention, it is only necessary to refer to a widely accepted definition of the term 'moral turpitude,' which is 'an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty be-

tween man and man.' In re Henry, 15 Idaho, 755, 99 P. 1054, 21 L.R.A.(N.S.) 207. In the case of Bendel v. Nagle (C.C.A.[9]), 17 F.(2d) 719, 720, 57 A.L.R. 1129, the court used this language: 'The crime of which the appellant was convicted is usually classed as rape, * * * and such a crime manifestly involves moral turpitude.' With this statement we agree." 46 F.2d 755, 756.

The Board of Immigration Appeals has consistently held statutory rape to be a crime involving moral turpitude. Matter of Dingena, 11 I & N Dec. 723 (1966). *Dingena* involved a deportation proceeding based upon a Wisconsin statutory rape conviction. The Wisconsin statute is much like the Minnesota statute. The Special Inquiry Officer follows *Dingena* and quotes therefrom as follows:

"It is concluded that whether the offense be designated as statutory rape, carnal knowledge of a female under the age of consent, or sexual intercourse with a child under the age of consent, the essential and material elements in all these cases are the carnal knowledge or intercourse and the age of the female. If sexual intercourse is present, and it is established that the female is under the age of consent, the element of mens rea does not enter because of the very nature of the offense and the interest of society in rendering such females incapable of giving consent.

\* \* \* \* \* \*

"However, as long as sexual intercourse with a child constitutes a crime under the law of the state, we conclude on the basis of precedent administrative and judicial decisions, that moral turpitude is involved."

The Board properly determined that the statutory rape charge upon which the petitioner was convicted is a crime involving moral turpitude.

---

1. The Second Circuit reversed on other grounds without discussing the point here in issue. 315 F.2d 673. The Supreme Court affirmed by an equally divided Court, 377 U.S. 214, 84 S.Ct. 1224, 12 L.Ed.2d 292.

Our examination of the record satisfies us that all of the requisites of the deportation statute, 8 U.S.C.A. § 1251 (a) (4) are supported by substantial evidence and that petitioner has failed to demonstrate that the findings and determination of the Board of Immigration appeals are clearly erroneous.

The deportation order is affirmed.

GARNETT THOMAS EISELE, District Judge * (dissenting).

I must dissent from the opinion of the majority.[1] I feel that a proper reading of the phrase "crime involving moral turpitude", contained in 8 U.S.C.A. § 1251(a) (4), would require that the case be returned to the Board of Immigration Appeals to determine if the petitioner's criminal conduct here did or did not, factually, "involve moral turpitude". I fully acknowledge that the existing case law, adopted in some Circuits, would preclude our requiring such a factual determination, but I do not think that the clear intent of Congress can be carried out without reaching and resolving this factual issue.

Over the years the courts and the Immigration Service have had many occa-

sions to deal with the question of whether an alien, admittedly convicted of some crime, should be deported under the quoted language. What might be called the "traditional" rule of construction of this phrase was expressed well by Judge Learned Hand:

"Neither the immigration officials, nor we, may consider the circumstances under which the crime was in fact committed. When by its definition it does not necessarily involve moral turpitude, the alien cannot be deported because in the particular instance his conduct was immoral." United States ex rel. Robinson v. Day, 51 F.2d 1022 (2d Cir. 1931).

Other decisions make it clear that the "definition" of the crime referred to in this statement of the rule includes the terms of the statute, any definitive construction of it by state courts, and the language of the indictment or information. The Service and reviewing courts, in following this approach, must determine whether *all* hypothetically possible criminal conduct, falling within those limits, *must necessarily* involve moral turpitude. If it does, the alien may be deported; if not, he may not be.[2] This

---

* United States District Judge, Eastern District of Arkansas, sitting by designation.

1. Appellant raises one issue not dealt with in this dissent, and that is that the phrase "crime involving moral turpitude" is unconstitutionally vague and violates the due process clause. If this were an open question, I would be inclined to agree that there is merit in the contention. This seems manifest by the variety and inconsistency of the various opinions attempting to deal with the phrase. However, I agree with the majority that we are foreclosed by Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886, from considering this constitutional issue.

Petitioner also states in his brief that aliens are not being dealt with according to any uniform standards applicable generally across the country. This is true. For example, in the present case, the information charged that the girl was sixteen at the time of the violation of Minnesota's laws. The two could have engaged in the act of intercourse in any one of twenty-seven states without Marciano be-

ing subject to prosecution for "statutory rape". In any of those states, he would not have committed this crime, and thus Congress' requirements for deportation would not have been met. It is obvious that there is a large element of happenstance involved in the determination of which aliens are deported and which are not, and it seems likely that Congress would have preferred a more nearly uniform treatment of aliens if it had anticipated this disparity in the law's application. However, this is a matter for the Congress rather than the courts.

2. This rule could be supported by the grammatical structure of the statute, as could the one I advocate in this opinion. I do not believe that prior decisions have made an analysis of the grammar as such. Here "crime" in the phrase "crime involving moral turpitude" could be interpreted with reference to: (1) the statutory or common law statement; or (2) the facts alleged to constitute the violation. My view is that the statutory or

rule is followed in the Second, Seventh, Ninth and District of Columbia Circuits, and probably in the Fifth Circuit as well. United States ex rel. Guarino v. Uhl, 107 F.2d 399 (2d Cir. 1939); Rassano v. Immigration and Naturalization Service, 377 F.2d 971 (7th Cir. 1966); Wadman v. Immigration and Naturalization Service, 329 F.2d 812 (9th Cir. 1964); Ablett v. Brownell, 99 U.S.App.D.C. 387, 240 F.2d 625 (1957); United States ex rel. McKenzie v. Savoretti, 200 F.2d 546 (5th Cir. 1952).

This rule seems to have originated with the decision in United States ex rel. Mylius v. Uhl, 210 F. 860 (2d Cir. 1914).[3] The reason stated for the rule, when a rationale is given, is one of practical administrative convenience. It is said, probably correctly, that it would be extremely difficult and time-consuming for the Immigration Service to examine into the factual context of every conviction sustained by an alien to see whether moral turpitude was, or was not, present in the circumstances of the particular crime as committed. In addition, examples are often given of conduct clearly criminal, but which would just as clearly not have involved moral turpitude. To relieve the Service of a heavy fact-finding burden, and to prevent miscarriages of justice in instances where the conduct did not involve moral turpitude, five Circuits have said that the crime as charged must under all possible sets of circumstances necessarily involve moral turpitude before the alien can be deported. Under this rule, it does not matter how clear it is that the particular petitioner-alien did indeed engage in morally turpitudinous conduct. In fact, the Service and the courts, using this approach, are barred from inquiring into the facts of any individual case and can only look at the indictment, the language of the statute, and court decisions construing same.

More recently, however, the First Circuit has criticized the traditional rule and adopted a somewhat different one. That court, in Pino v. Nicolls, 215 F.2d 237 (1954), indicated its view that the accurate application of the older rule would practically emasculate § 1251(a) (4):

> "[I]t is possible to conceive of circumstances under which almost any crime might be committed for the purest of motives, motives, however, which the law does not accept as a defense." *Id.*, at 245.

This criticism seems to me entirely valid, and I would add the additional observation that the criticized rule must certainly have resulted in the permitting of any number of aliens who had indeed committed crimes involving moral turpitude to remain in this country. I cannot believe that Congress intended for such persons to be allowed to remain simply because there might have been no moral turpitude in the commission by other individuals (real or hypothetical) of crimes described by the wording of the same statute under an identical indictment.

This Court, in its opinion today, appears to implicitly agree that the traditional rule is not the best one.[4] Certain-

common law statement cannot constitute a "crime". The crime must consist in the *acts* in violation of that legal statement.

3. At the time the rule was first expounded, it is probable that many, if not most, federal administrative agencies were deemed by the courts to be incapable of deciding such complex questions as when an act "involved moral turpitude" from the standpoint both of expertise and of proper role. Administrative law has evolved considerably since that time. In contemporary government we are quite prepared to delegate innumerable complicated and subtle questions like this one to administrative agencies. To the extent that the rule was developed because of a then-justified fear of administrative incapacity, an extent which is not revealed by the decisions, it should long since have lost its force.

4. If the "traditional" rule were to be followed here, the decision of the Board of Immigration Appeals, in my opinion, would have to be reversed and Marciano discharged from the effect of the deportation order.

ly it has not followed it. Rather, it appears to adopt and follow the rationale stated in Pino v. Nicolls:

> "If the crime in its general nature is one which in common usage would be classified as a crime involving moral turpitude, neither the administrative officials in a deportation proceeding nor the courts on review of administrative action are under the oppressive burden of taking and considering evidence of the circumstances of a particular offense so as to determine whether there were extenuating circumstances which might relieve the offender of the stigma of moral obliquity." *Id.*, at 245.

The majority here takes the same approach, and this is the point at which my disagreement begins.

I cannot agree that Pino v. Nicolls adopted the best rule when it asked that the Service and the reviewing courts look only to the "general nature" of the crime and its classification in "common usage". Congress did not decree deportation where there was a conviction of a crime which "generally" or "commonly" involves moral turpitude. It said that deportation was the consequence when the crime involved moral turpitude, and I can only assume that it meant when moral turpitude was in fact involved.

There are many instances in which the application of the Pino v. Nicolls rule would itself result in a miscarriage of justice. There are the cases cited by Judge Anderson in his dissent in Tillinghast v. Edmead, 31 F.2d 81 (1st Cir. 1929), of a mother stealing milk for her hungry child, of a "foolish college student" stealing a sign, and of a boy stealing an apple from an orchard; and there is the situation posed by Judge Learned Hand of a boy's forcing his way into a vacant building, United States ex rel. Guarino v. Uhl, *supra*. There are, of course, literally hundreds of other examples that could be given. All of these hypothetical situations are crimes, involving criminal intent and criminal culpability. All of them could result in de-

portation under the rule of Pino v. Nicolls, and of the majority here, ·because such crimes as larceny, burglary, and breaking and entering "usually", "commonly" and "generally" involve moral turpitude. None of them can be said to involve moral turpitude, however; not, at least, without further examination into the factual context. It might be that today some crimes would be held to involve moral turpitude which judges writing in past years did not think contravened the moral standards of that time. The converse might be true with regard to other types of offenses. The point is that I do not believe Congress intended for all aliens in these, and many other hypothetical situations, be deported. The statute says deportation shall follow *when the crime committed involves moral turpitude*, not when that type of crime "commonly" or "usually" does.

It seems obvious, therefore, that both the "traditional" rule and the Pino v. Nicolls rule produce results contrary to those intended by the plain language of the deportation statute. The Pino v. Nicolls rule, in addition, mandates the extremely severe consequence of deportation from this country in at least some instances which may admittedly (by its very hypothesis) result in gross miscarriages of justice. The rule I think preferable has, as far as I am aware, been stated at the appellate levels only in the dissent in Tillinghast v. Edmead, *supra*. Judge Anderson there quoted the lower court opinion and urged it upon his colleagues. I will do the same here:

> "Whether any particular conviction involves moral turpitude under this test may be a question of fact. Some crimes are of such character as necessarily to involve this element; others \* \* \* do not; and still others might involve it or might not. As to this last class the circumstances must be regarded to determine whether moral turpitude was shown." Ex parte Edmead, 27 F.2d 438, 439 (D.Mass.1928) (citation omitted).

Perhaps the Pino v. Nicolls analysis·("it is ·possible to conceive of circumstances under which almost any crime might be committed for the purest of motives") is so universally applicable that it would completely eliminate the first of these three categories of crimes, but that for present purposes is immaterial. I think the three-classification approach is the most appropriate one, however nearly all-inclusive the "might or might not" class may be.[5]

`'''`Nor can I credit the implicit assumption, made in some decisions, that deportation hearings to determine the factual existence or non-existence of moral turpitude would merely be a collateral determination of ·criminal culpabi<sup></sup>'ty. Criminal culpability is, or can be, something quite different from the presence or absence of moral turpitude. Neither the majority nor the dissenters in Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886, equated the two concepts. The former requires the existence of an element variously called criminal intent or *mens rea*, an element whose existence is to be ascertained according to a long series of rules developed over many years in the English and American common and statutory law. Moral turpitude, conversely, involves a question of morals, a set of standards that are hopefully closely related to criminality and criminal culpability but are by no means identical to them.

Since moral turpitude is different from criminality, the statute seems to require that that element be assessed separately. Undoubtedly it is difficult for the Service to make continual determinations of the nation's shifting and often indistinct moral standards. Nevertheless, it seems to me that such determinations are what the law requires. Considerations of administrative convenience should certainly be secondary to the determination and enforcement of the obvious legislative intent. It may or may not be wise to charge an administrative agency with this sort of duty, but Congress has done so and the Supreme Court has said that the standard provided is sufficiently definite that administrators will be able to apply it.

Turning finally to the circumstances of the case before us, I do not see how the present state of the record could justify either an order of deportation or a decision that Mr. Marciano is not deportable.

At the time of Marciano's original guilty plea, Minnesota law required only two elements to be shown to sustain a conviction under its statutory rape statute: an act of intercourse, and the statutorily prescribed age of the girl. Defenses such as the previous unchaste character of the girl, reasonable mistake as to age, a marriage which the parties thought they had contracted in the past but which was void for some technical defect,[6] all of which are avail-

---

5. Although the "three-classification" rule has not been adopted by any Circuit Court, and although it has been advocated at the appellate level only in one dissenting opinion, I do not think it would be inappropriate for this court to adopt such a rule now. The majority is not following the more common rule, the "traditional" one. If it wishes to go against the weight of authority represented by the five Circuits which follow that rule—and I agree that it should—then I think the "three-classification" approach is clearly preferable to Pino v. Nicolls (even though the latter has been approved by one Circuit), because it is the only one of the three rules which is in accord with the basic legislative intent.

6. This situation is clearly possible under the Minnesota statute. A man over twenty-one and a girl over sixteen, with the consent of her parents, may legally marry. If such a couple went through a marriage ceremony which they thought was valid, but which was not because, say, the person performing the ceremony was not licensed properly, the man might nevertheless be convicted under the Act if he had intercourse with his assumed "wife" on their assumed "honeymoon" because the girl would not be "his spouse" and thus excepted under the Act. See Minn.Statutes Anno. § 609.295(4).

able as defenses to at least some other states' "statutory rape" laws, were no bar in Minnesota to prosecution or conviction. Neither, of course, was the consent of the girl to the act. Several months later, however, the Minnesota Supreme Court indicated that it realized that some situations might arise in which applications of its own rules might produce unjust results. On Marciano's own appeal, it said that they might rise to a violation of a defendant's constitutional rights, but did not say what those situations are. No one, therefore, is able to tell yet with any certainty which, if any, of the possible defenses to such a charge will be allowed in Minnesota prosecutions. Presumably, the Minnesota judicial system still relies heavily on "the good judgment of prosecutors and jurors" to avoid an unjust result. State v. Morse, 281 Minn. 378, 385, 161 N.W.2d 699, 703.

No one can reasonably say that every act warranting conviction under a statute such as Minnesota's would necessarily constitute a crime involving moral turpitude. I do not think, therefore, that this crime can be put into the first classification suggested by Ex parte Edmead, *supra,* with Mr. Marciano consequently deported without a factual determination ever having been made as to the presence or absence of moral turpitude.

There have, of course, been factual inquiries into some aspects of the crime. As stated in the majority opinion, Marciano applied for postconviction relief in the Minnesota trial court and was granted an evidentiary hearing. That hearing developed certain factual matters, and others are known because of Marciano's own statements at the time of his guilty plea, some of which were incorporated into the opinion of the Minnesota Supreme Court when it ruled on his direct appeal. It appears that Marciano knew the girl's age and that they had discussed marriage prior to the date of the crime. Marciano contended that the girl had been staying in his apartment and that she had told him she was pregnant by another man. The Min-

nesota courts neither found these assertions to be true nor found them untrue. The trial court, after the postconviction hearing, did find that Marciano was "the aggressor". The Service's Special Inquiry Officer, relying on Matter of Dingena, 11 I. & N. Dec. 723 (1966), declined to receive any further evidence concerning the facts of the crime as committed. The Board of Immigration Appeals affirmed his decision.

The record is inadequate to determine whether Marciano's crime involved moral turpitude. The only finding that even might go toward such a determination is the one stating Marciano to be "the aggressor". However, that does not establish the point at issue. The Minnesota courts seem to be of the opinion that there must be "an aggressor" and "a victim" in every act of intercourse, or at least in every act of intercourse involving an underage female. The trial court, in its memorandum accompanying the order denying postconviction relief, asked itself the question, "which of the two parties involved * * * was the 'aggressor' with respect to the circumstances surrounding the crime?" The court specifically found "that Petitioner, not Laural [the girl], was the aggressor, and that the victim in this case was Laural, not Petitioner". The Minnesota Supreme Court had previously referred to "fact situations where the underage female is the aggressor and her male partner the real victim", in a passage quoted in the majority opinion. State v. Morse, 281 Minn. at 385, 161 N.W.2d at 703. When ascertaining the presence or absence of moral turpitude surrounding an act of consensual intercourse, it is not reasonable to assume that there must be an "aggressor" and a "victim". I have no quarrel with Minnesota's courts using such a concept in the administration of the state's criminal laws. The Minnesota courts were quite correct in not deciding whether Marciano's conduct involved moral turpitude. That is a matter of federal law, the interpretation of which Congress has entrusted to the Immigration Service and, ultimately, to the

federal courts. Neither the state courts' use of the word "aggressor" nor any of their other findings are of much help in that regard.

I must concede that the four judicial, and the one administrative, decisions cited by the majority, along with several others, are unanimous in holding "statutory rape" to be a crime involving moral turpitude without regard to the actual, factual context. I also concede, arguendo, that such crimes "usually" and "commonly" involve moral turpitude.[7] The particular decisions reveal very little about the nature of the offenses as defined by the separate states' laws or about the circumstances surrounding the crimes as committed by the particular individuals in those cases. With knowledge of such matters I might, or might not, have agreed with the results reached in those decisions. However, to the extent that they hold the factual context irrelevant, and to the extent that they hold that every hypothetically possible instance of intercourse with an underage female must of necessity involve moral turpitude, I must disagree with them. I might be inclined to a different view if fornication and adultery were held in all instances to involve moral turpitude, but such is not the case. See Matter of R—, 6 I. & N. Dec. 444 (1954). I believe the appellation, the short title, of the crime (particularly the word "rape") has had a tendency to mislead courts in the past. I seriously doubt that in today's society an instance of consensual intercourse *necessarily* involves moral turpitude just because the state in which the act took place has raised the age of consent to eighteen years. Again, I am not referring to the question of criminality or

of criminal culpability. The state certainly has the power to determine that act to be a criminal one, and, within constitutional limits, to determine what sort of intent must have been present to support a conviction. But the state criminal law does not make that act one involving moral turpitude.

In summary, the "traditional" rule would prevent the deportation of many persons who had committed crimes actually involving moral turpitude. On the other hand, under the rule of Pino v. Nicolls, now apparently followed by this Court, persons committing crimes *not* involving moral turpitude may be deported if such crimes are *generally* ones that, when committed, involve moral turpitude. It seems unlikely that Congress intended either result.

The "clearly erroneous" test is not involved. Here there is an absence of essential factual findings. The Special Inquiry Officer and the Board of Immigration Appeals, following *Matter of Dingena, supra,* concluded that the only essential and material elements were intercourse and the age of the female. The factual assessment of moral turpitude was intentionally avoided on the theory that administrative and judicial precedent prohibited such an assessment in individual cases. The determination here that the crime was one involving moral turpitude was clearly a conclusion of law.

On the present record, neither this Court, nor anyone else, could accurately and fairly determine whether Marciano's crime involved moral turpitude. I would remand the case in order that this essential factual question might be determined.

---

7. Actually, the validity of such an assumption is doubtful at best. It would certainly be true if we were dealing with Delaware's statutory rape law, which sets the age of consent at seven years, or with the laws of a state setting it at ten, or twelve. Minnesota, however, is among the states with the highest ages of consent, and the proposition assumed above for argument's sake is extremely tenuous when speaking of a state statute that includes young women a few days short of their eighteenth birthday within its prohibition.