# Matter of Cristoval SILVA-TREVINO, Respondent

File A013 014 303 - Los Fresnos, Texas

*Decided by Attorney General November 7, 2008*

U.S. Department of Justice
Office of the Attorney General

(1) To determine whether a conviction is for a crime involving moral turpitude, immigration judges and the Board of Immigration Appeals should: (1) look to the statute of conviction under the categorical inquiry and determine whether there is a "realistic probability" that the State or Federal criminal statute pursuant to which the alien was convicted would be applied to reach conduct that does not involve moral turpitude; (2) if the categorical inquiry does not resolve the question, engage in a modified categorical inquiry and examine the record of conviction, including documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, and the plea transcript; and (3) if the record of conviction is inconclusive, consider any additional evidence deemed necessary or appropriate to resolve accurately the moral turpitude question.

(2) It is proper to make a categorical finding that a defendant's conduct involves moral turpitude when that conduct results in conviction on the charge of intentional sexual contact with a person the defendant knew or should have known was a child.

(3) To qualify as a crime involving moral turpitude for purposes of the Immigration and Nationality Act, a crime must involve both reprehensible conduct and some degree of scienter, whether specific intent, deliberateness, willfulness, or recklessness.

FOR RESPONDENT: Jaime M. Diez, Esquire, Weslaco, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Dyann Bernstein, Assistant Chief Counsel

## BEFORE THE ATTORNEY GENERAL
(November 7, 2008)

On July 10, 2007, pursuant to 8 C.F.R. § 1003.1(h)(1)(i) (2007), Attorney General Gonzales directed the Board of Immigration Appeals to refer to him for review its decision in this matter. For the reasons set forth in the accompanying opinion, I vacate the Board's decision and remand this matter for further proceedings in accordance with the opinion.

OPINION

The issue in this case is whether respondent's conviction under a Texas statute that criminalizes acts of "indecency with a child" should be deemed a conviction for a "crime involving moral turpitude" that renders respondent inadmissible, and therefore ineligible for discretionary relief from deportation, under the Immigration and Nationality Act. *See* section 212(a)(2) of the Act, 8 U.S.C. § 1182(a)(2) (2006). The Board of Immigration Appeals and the Federal courts have long struggled in administering and applying the Act's moral turpitude provisions, and there now exists a patchwork of different approaches across the nation. My review of this case presents an opportunity to establish a uniform framework for ensuring that the Act's moral turpitude provisions are fairly and accurately applied.

There are a few basics on which the Board and the Federal courts have generally agreed. To begin with, they generally agree that in deciding whether an alien's prior criminal conviction constitutes a conviction for a crime involving moral turpitude—that is, whether moral turpitude "necessarily inheres" in a violation of a particular State or Federal criminal statute, *Matter of Torres-Varela*, 23 I&N Dec. 78, 84 (BIA 2001)—immigration judges and the Board should engage in a "categorical" inquiry and look first to the statute of conviction rather than to the specific facts of the alien's crime. Where this categorical inquiry does not establish that an alien's prior crime necessarily involved moral turpitude, the Board and most Federal courts permit some inquiry into the particular facts of the alien's prior offense. This secondary inquiry is sometimes referred to as a "modified" categorical analysis.

Although each of the Federal courts of appeals has endorsed some form of this two-step categorical inquiry (and the Board typically employs the form endorsed by the circuit in which a case arises), the courts have not uniformly applied it. Instead, courts have applied a wide range of approaches with respect to both prongs of the test, resulting in a patchwork of conflicting legal and evidentiary standards. Moreover, many of these approaches do not adequately perform the function they are supposed to serve: distinguishing aliens who have committed crimes involving moral turpitude from those who have not. These shortcomings point to the need for a new, standardized approach—one that accords with the statutory text, is administratively workable, and furthers the policy goals underlying the Act.

The Act delegates to the Department of Justice—the agency charged with interpreting and implementing many of its provisions—the authority to craft such an approach. *See* section 103(a)(1) of the Act, 8 U.S.C. § 1103(a)(1) (2006) (providing that the "determination and ruling by the Attorney General

with respect to all questions of law shall be controlling"); *National Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) ("*Chevron*'s premise is that it is for the agencies, not courts, to fill statutory gaps."). Accordingly, this opinion establishes an administrative framework for determining whether an alien has been convicted of a crime involving moral turpitude.[1]  First, in evaluating whether an alien's prior offense is one that categorically involves moral turpitude, immigration judges must determine

---

[1] As discussed below, the Act refers to "crimes involving moral turpitude" in two separate provisions, *see* section 212(a)(2)(A)(i)(I); section 237(a)(2)(A)(i)(I)-(II) of the Act, 8 U.S.C. § 1227(a)(2)(A)(i)(I)-(II) (2006), but the statute does not define the term.  The absence of a statutory definition dates back to 1891, when the term first appeared in the immigration context, *see* Act of March 3, 1891, 26 Stat. 1084, Ch. 551, and courts and the Department have long agreed that this omission reflects Congress's decision to commit the definition of the term to "administrative and judicial interpretation." *Cabral v. INS*, 15 F.3d 193, 195 (1st Cir. 1994); *see also, e.g.*, *Ali v. Mukasey*, 521 F.3d 737, 739 (7th Cir. 2008); 23 A.L.R. Fed. 480, § 9(e) (2008 Supp.) (collecting authorities).

Although the Board has long filled this statutory gap by defining and applying the term "crime involving moral turpitude" in deciding immigration cases, some courts have recently stated that the Board's approach has been neither specific enough nor tailored enough to "policies embodied in the immigration statutes" to merit *Chevron* deference. *E.g.*, *Wei Cong Mei v. Ashcroft*, 393 F.3d 737, 740 (7th Cir. 2005).  I believe the definition in existing Board precedent merits judicial deference under controlling Supreme Court decisions.  *See, e.g.*, *Brand X*, 545 U.S. at 982.  That said, this opinion rearticulates the Department's definition of the term in a manner that responds specifically to the judicial criticism.  As detailed in Part III and footnote 5 below, this opinion makes clear that, to qualify as a crime involving moral turpitude for purposes of the Act, a crime must involve both reprehensible conduct and some degree of scienter, whether specific intent, deliberateness, willfulness, or recklessness. This definition rearticulates with greater clarity the definition that the Board (and many courts) have in fact long applied.  *See* Part III and n.5 *infra* (citing cases); *see also, e.g.*, *Jordan v. DeGeorge*, 341 U.S. 223, 228 n.13, 230 (1951) (discussing the historical use of the term "moral turpitude" as a proxy for a flawed character that rendered an individual unfit for immigration benefits and defending the Court's categorical characterization of fraud crimes as crimes involving moral turpitude by focusing on a litany of fraud offenses requiring proof of specific intent or at least "wilful" commission). The definition also faithfully implements the Act's distinction between crimes involving moral turpitude (which trigger specific immigration consequences) and criminal conduct generally (which the Government has a valid interest in punishing whether or not it qualifies as morally offensive or involves scienter) by more clearly articulating the subjective, or intent, element that has long characterized judicial and administrative recognition of crimes involving moral turpitude in the immigration context.  Additionally, the definition in this opinion advances important aspects of immigration policy because it will provide aliens with clearer notice of which criminal convictions will trigger certain immigration consequences and will help ensure, both on its own terms and as a consequence of proper judicial deference, uniform application of the Act's moral turpitude provisions to similar cases no matter where they arise.

whether there is a "realistic probability, not a theoretical possibility," that the State or Federal criminal statute pursuant to which the alien was convicted would be applied to reach conduct that does not involve moral turpitude. *Cf. Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

Second, where this categorical analysis does not resolve the moral turpitude inquiry in a particular case, an adjudicator should proceed with a "modified categorical" inquiry. In so doing, immigration judges should first examine whether the alien's record of conviction—including documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea and the plea transcript—evidences a crime that in fact involved moral turpitude. When the record of conviction is inconclusive, judges may, to the extent they deem it necessary and appropriate, consider evidence beyond the formal record of conviction. The goal of this inquiry is to discern the nature of the underlying conviction where a mere examination of the statute itself does not yield the necessary information; it is not an occasion to relitigate facts or determinations made in the earlier criminal proceeding.

Because the Board did not have the benefit of this analysis when it issued the opinion below, I vacate the decision in this case and remand for further proceedings consistent with this opinion.

## I.

Respondent is a native and citizen of Mexico who was admitted to the United States as a lawful permanent resident in 1962. On October 6, 2004, respondent entered a plea of no contest to the criminal offense of "indecency with a child" under Title 5, Section 21.11(a)(1) of the Texas Penal Code, a second-degree felony punishable by a 2- to 20-year prison term. *Matter of Cristoval Silva-Trevino*, A13 014 303 at 1 (BIA Aug. 8, 2006) (hereinafter "Bd. Op."); *Matter of Cristoval Silva-Trevino*, A13 014 303 at 3 (Oral Dec. of Immig. Judge, Feb. 9, 2006) (hereinafter "IJ Dec."). Section 21.11(a)(1) makes it illegal for a person to engage in "sexual contact" with a child younger than 17 years old who is not the person's spouse, unless the person is "not more than three years older than the victim and of the opposite sex." Texas Penal Code § 21.11(a)(1), (b)(1) (2003). The statute defines "sexual contact" to mean "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child" or "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person," if "committed with the intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c). The State court found that there was sufficient evidence to accept respondent's plea and further found that respondent committed the offense in question on April 13, 2002, when the respondent was approximately 64 years old. IJ Dec. at 3. The

court then deferred further proceedings, fined respondent $250, placed him under community supervision for a period of 5 years, and ordered him to attend sex offender counseling sessions. *Id.* at 3-4.

In November 2005, the Department of Homeland Security initiated removal proceedings against respondent on the ground that he had been convicted of an "aggravated felony." Section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2006). The Immigration Judge held, inter alia, that respondent's State conviction constituted a conviction for "sexual abuse of a minor"—an "aggravated felony" that renders an alien removable under section 101(a)(43)(A) of the Act, 8 U.S.C. § 1101(a)(43)(A) (2006). IJ Dec. at 5-6.

Respondent then requested discretionary relief from removal through adjustment of status to lawful permanent resident under section 245(a) of the Act, 8 U.S.C. § 1255(a) (2006). Respondent contended that his "aggravated felony" conviction did not bar adjustment of status because the conviction did not fall within one of the specific grounds for inadmissibility listed in section 212(a)(2) of the Act, one of which is conviction of a crime involving moral turpitude. IJ Dec. at 9-12. Respondent argued that his State conviction should not be considered a conviction for a crime involving moral turpitude because (1) both the Board and the United States Court of Appeals for the Fifth Circuit focus on whether the entire category of offenses covered by a State criminal statute involves moral turpitude; and (2) the Texas statute under which he was convicted does not require "that a person have knowledge that the individual with whom the perpetrator has sexual contact is a child" and thus permits convictions in cases that do not involve moral turpitude where the defendant honestly and reasonably believed his sexual contact was with a consenting adult. *Id.* at 9.

The Immigration Judge rejected respondent's arguments, denied respondent's request for adjustment of status, and ordered him removed to Mexico. *Id.* at 12. The offenses covered by the Texas law, the Immigration Judge concluded, were "analogous to a statutory rape offense," an offense that many courts and the Board have categorically "held to be a crime involving moral turpitude" whether or not the conviction required that a defendant knew or should have known his victim's age. *Id.* at 9-10 (citing *Castle v. INS*, 541 F.2d 1064, 1066 (4th Cir. 1976); *Marciano v. INS*, 450 F.2d 1022 (8th Cir. 1971); *Matter of Torres-Varela*, 23 I&N Dec. 78, 84 (BIA 2001); *Matter of Imber*, 16 I&N Dec. 256, 258 (BIA 1977)). Because, in the Immigration Judge's view, respondent had been convicted of a crime involving moral turpitude, respondent was ineligible for adjustment of status.

On appeal to the Board, respondent conceded removability and challenged only the Immigration Judge's determination that he was ineligible for the discretionary relief of adjustment of status. In addressing this contention, the

Board agreed that the moral turpitude inquiry turns on the "statutory crime definition as interpreted by the state's courts, without regard to the particular circumstances surrounding the specific offender's violation." Bd. Op. at 3. Believing it was "constrained" by Fifth Circuit law to "consider the minimum circumstances possible for a conviction," *id.* at 3-4 (citing *Rodriguez-Castro v. Gonzales*, 427 F.3d 316, 320 (5th Cir. 2005)), the Board found that not every crime potentially "covered under . . . § 21.11(a)(1) involve[s] conduct so depr[a]ved as to warrant classifying the statute as a whole as one involving moral turpitude," *id.* at 4. The Board noted that Texas Penal Code § 21.11(a)(1) "presents a wide range of scenarios which could support a conviction," some of which "clearly involve reprehensible conduct which is contrary to the accepted rules of morality." Bd. Op. at 4. But it concluded:

> In contrast to statutory rape, . . . which typically involves penetration or something similar, the sexual conduct encompassed by [Texas Penal Code] § 21.11(a)(1) potentially involves much less intrusive contact. For example, a defendant in Texas has been convicted under the statute for touching the chest/breast of a 10-year-old boy. *See Sullivan v. State*, 986 S.W. 2d 708 (Tex. Crim. App. 1999). This raises the possibility that a 20-year-old woman dancing suggestively with a youth just under the age of 17, who represents himself as older and can reasonably be believed to be such, could be liable under the statute if she acted on a desire to arouse herself or a spectator. This is so even if she touched the victim through his clothing. This does not strike us as the type of behavior which would be classified as involving moral turpitude under the Act.

Bd. Op. at 3-4 (footnote omitted). Based on this analysis, the Board held that respondent's conviction, whatever its actual facts, should *not* be considered a conviction for a crime involving moral turpitude because section 21.11(a)(1) of the Texas Penal Code criminalizes at least some conduct that does not involve moral turpitude. Bd. Op. at 3-4. Thus, having reversed the Immigration Judge's moral turpitude determination, the Board remanded for consideration of respondent's claim for discretionary adjustment of status.

## II.

### A.

This opinion begins, as it must, with the statutory text. *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 172 (2001). The Act refers to "moral turpitude" in two separate provisions. Section 212(a)(2)(A)(i)(I), one of the provisions at issue here, provides that "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime" is inadmissible.

Section 245(a), in turn, provides that an inadmissible alien is ineligible for discretionary adjustment of status. Section 237(a)(2)(A)(i) of the Act separately provides that "[a]ny alien who . . . is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and . . . for which a sentence of one year or longer may be imposed" is deportable.

The statute does not define the term "crime involving moral turpitude." *See supra* note 1. It is also silent on the precise method that immigration judges and courts should use to determine if a prior conviction is for a crime involving moral turpitude. To the extent it suggests a method, the text actually cuts in different directions. Some statutory language—for example, use of the phrase "convicted of" rather than "committed"—suggests that the relevant inquiry should be categorical and focus on whether moral turpitude inheres in the statutory elements required for conviction rather than in the particularized facts of the alien's crime. Section 212(a)(2)(A)(i)(I) of the Act; *cf. Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1130 n.9 (9th Cir. 2007) (making a similar point about the aggravated felony bar in the context of cancellation of removal). Other language—for example, use of the word "involving" and the reference in section 212(a)(2)(A)(i)(I) to aliens who admit "committing" certain "acts"—seems to call for, or at least allow, inquiry into the particularized facts of the crime. *See Marciano*, 450 F.2d at 1028 (Eisele, J., dissenting) ("[Congress] said that deportation was the consequence when the crime involved moral turpitude, and I can only assume that it meant when moral turpitude *was in fact involved*." (emphasis added)).

Faced with this ambiguity, the Board and the Federal courts have long taken the view that judges should begin by engaging in some sort of "categorical" inquiry to determine whether moral turpitude "necessarily inheres" in a conviction under a particular State or Federal criminal statute. *Matter of Torres-Varela*, *supra*, at 84. To date, however, the Department has not adopted a preferred methodology for conducting that categorical inquiry, and the Board has chosen instead to make such determinations in accordance with the law of the circuit in which an alien's case arises. *See, e.g.*, Bd. Op. at 4.

The absence of an authoritative administrative methodology for resolving moral turpitude inquiries has resulted in different approaches across the country. The Third and Fifth Circuits, for example, have held that convictions under a criminal statute may categorically be considered crimes involving moral turpitude only if an examination of the statute reveals that even the most minimal conduct that could hypothetically permit a conviction necessarily would involve moral turpitude. *See, e.g.*, *Amouzadeh v. Winfrey*, 467 F.3d 451, 455 (5th Cir. 2006) (analyzing the "minimum criminal conduct necessary

to sustain a conviction under the statute"); *Partyka v. Att'y Gen.*, 417 F.3d 408, 411 (3d Cir. 2005) (considering whether the "least culpable conduct" covered by the criminal statute in issue would necessarily involve moral turpitude); *see also, e.g.*, *Quintero-Salazar v. Keisler*, 506 F.3d 688, 692 (9th Cir. 2007) (analyzing "whether the full range of conduct encompassed by the statute" involves moral turpitude). The First and Eighth Circuits, by contrast, have considered the "general nature" of the crime and its classification in "common usage." *See, e.g.*, *Marciano*, 450 F.2d at 1025; *Pino v. Nicolls*, 215 F.2d 237, 245 (1st Cir. 1954), *rev'd on other grounds sub nom. Pino v. Landon*, 349 U.S. 901 (1955). Most recently, the Ninth Circuit has suggested that the test should be whether moral turpitude necessarily inheres in all cases that have a "realistic probability" of being prosecuted. *See, e.g.*, *Nicanor-Romero v. Mukasey*, 523 F.3d 992, 1004-05 (9th Cir. 2008).

Moreover, even in circuits that agree that moral turpitude cases should begin with a categorical inquiry, confusion remains about what, if anything, may follow such an inquiry where categorical analysis does not resolve the question. Some courts allow for further inquiry in a second step; some do not. The circumstances under which courts that permit a second-stage inquiry will allow that inquiry to proceed, and the facts they will consider in such an inquiry, also vary widely. For example, some courts have refused to allow an immigration judge to inquire at all into the specific facts of a case. *See, e.g.*, *Rodriguez-Castro v. Gonzales*, 427 F.3d 316, 320-21 (5th Cir. 2005); *Rodriquez-Herrera v. INS*, 52 F.3d 238 (9th Cir. 1995). Others have looked to the record of conviction for the alien's prior offense—but not beyond that record—in all cases where the criminal statute at issue "prohibits conduct that may not necessarily involve moral turpitude." *Nicanor-Romero*, 523 F.3d at 1007. And still others have considered the record of conviction only if the statute of conviction is "divisible" into multiple subsections. *Amouzadeh*, 467 F.3d at 455. Most recently, the Seventh Circuit rejected any evidentiary limitation, concluding that the Department may in its discretion consider all relevant evidence bearing on the particular facts of an alien's prior criminal conviction. *See Ali v. Mukasey*, 521 F.3d 737, 742-43 (7th Cir. 2008).

The resulting patchwork is problematic. As the Board and the courts have observed, because our immigration laws "often affect individuals in the most fundamental ways," those laws "to the greatest extent possible . . . should be applied in a uniform manner nationwide." *Matter of Cerna*, 20 I&N Dec. 399, 408 (BIA 1991); *see also Rosendo-Ramirez v. INS*, 32 F.3d 1085, 1091 (7th Cir. 1994) ("National uniformity in the immigration and naturalization laws is paramount: rarely is the vision of a unitary nation so pronounced as in the laws that determine who may cross our national borders and who may become a citizen."). Yet under the existing arrangement, aliens who commit identical offenses may be treated differently with respect to eligibility for admissibility

and adjustment of status. An alien who resides in one circuit might be eligible for adjustment of status even though he committed the same crime as an alien who lives in a different circuit and is ineligible for such relief. Such significant determinations should not be "tied to the mere happenstance of where [an alien's] case[] arise[s] geographically." *Matter of Cerna*, *supra*, at 408; *see also Ferreira v. Ashcroft*, 382 F.3d 1045, 1050 (9th Cir. 2004) (emphasizing the importance of "national uniformity of federal law"); *The Federalist* No. 32, at 199 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (the power over naturalization must "necessarily be exclusive; because if each State had power to prescribe a Distinct Rule, there could not be a Uniform Rule").

Moreover, even on their own terms, many of the circuits' approaches are poorly designed to distinguish crimes that involve moral turpitude from those that do not. For example, a categorical moral turpitude analysis that turns on whether moral turpitude inheres in the hypothetical "minimum conduct" that could result in conviction under a particular criminal statute is likely to result in under-inclusive application of the Act's moral turpitude provisions. Such an analysis would require a judge to refrain from applying those provisions with respect to criminal offenses that *do* involve moral turpitude if the judge simply hypothesizes some theoretical situation in which the statute *might* be applied to conduct that does not involve moral turpitude. *See, e.g.*, *Marciano*, 450 F.2d at 1027 (Eisele, J., dissenting) ("I cannot believe that Congress intended for [persons who have actually committed crimes involving moral turpitude] to be allowed to remain simply because there might have been no moral turpitude in the commission by other individuals (real or hypothetical) of crimes described by the wording of the same statute under an identical indictment."). By contrast, an approach that applies the Act's moral turpitude provisions to all convictions under a particular criminal statute if moral turpitude inheres in the "usual" or "common" case is likely to be over-inclusive, because it would allow judges to apply the moral turpitude provisions to aliens whose crimes did not in fact "involve moral turpitude." *See, e.g.*, *id.* at 1028 ("The statute says deportation shall follow when the crime committed involves moral turpitude, not when that type of crime 'commonly' or 'usually' does.").

These conditions call for a reexamination of the current, fractured approach judges have applied in reviewing moral turpitude determinations, and for implementation of a uniform approach. Although to date the Department generally has deferred to the relevant circuit court in deciding which approach to use in a given case, providing a consistent, authoritative, nationwide method for interpreting and applying ambiguous provisions of the immigration laws, such as those involved here, is one of the Department's key duties. *See, e.g.*, section 103(a)(1) of the Act (a "determination and ruling by

the Attorney General with respect to all questions of law shall be controlling"); 8 C.F.R. § 1003.1(d)(1) (2008) ("[T]he Board, through precedent decisions, shall provide clear and uniform guidance to [the Department of Homeland Security], the immigration judges, and the general public on the proper interpretation and administration of the Act and its implementing regulations."); *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("[W]e have recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988))); *Jian Hui Shao v. BIA*, 465 F.3d 497, 502 (2d Cir. 2006) (noting that "only a precedential decision by the [Board]—or the Supreme Court of the United States—can ensure the uniformity that seems to us especially desirable in [asylum] cases such as these").

Moreover, the Supreme Court has made clear that administrative agencies are not bound by prior judicial interpretations of ambiguous statutory provisions, because there is "a 'presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.'" *Brand X*, 545 U.S. at 982 (quoting *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 740-41 (1996); citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)); *see Ali*, 521 F.3d at 742-43 (observing that where the Department has "fully developed its own position" regarding the method for determining whether a prior conviction constitutes a crime involving moral turpitude, that position is entitled to deference notwithstanding prior judicial precedent).

With these background principles in mind, I turn to the methodology adjudicators should use to determine whether a prior conviction constitutes a crime involving moral turpitude under the Act.

B.

The Department and the Federal courts agree that, to determine whether a crime involves moral turpitude, immigration judges should first engage in a "categorical" inquiry and look to the statute of conviction rather than to the specific facts of an alien's crime. As noted, the courts of appeals have to date adopted three basic approaches: (1) the "minimum conduct" approach, which looks to whether moral turpitude inheres in the most minimal conduct that could hypothetically permit a conviction; (2) the "common case" approach, which looks to whether moral turpitude inheres in the "usual" case or in the general nature of a crime; and (3) the "realistic probability" approach, which

asks whether moral turpitude necessarily inheres in all cases that have a realistic probability of being prosecuted.

As also noted, the "minimum conduct" and "common case" approaches, especially when combined with evidentiary limitations, can result in under- or over-inclusive application of the Act's moral turpitude provisions. The "realistic probability" method mitigates these problems by taking a more refined approach to immigration inquiries. Specifically, it focuses the adjudicator on a criminal statute's actual scope and application and tailors the categorical moral turpitude inquiry by asking whether, at the time of an alien's removal proceeding, any actual (as opposed to hypothetical) case exists in which the relevant criminal statute was applied to conduct that did not involve moral turpitude. *Cf. Duenas-Alvarez*, 549 U.S. at 193. If the statute has not been so applied in any case (including the alien's own case), the adjudicator can reasonably conclude that all convictions under the statute may categorically be treated as ones involving moral turpitude. In such circumstances, the history of adjudication generally establishes no realistic probability that the statute, whatever its language may hypothetically allow, would actually be applied to acts that do not involve moral turpitude. *See id.* By contrast, if the language of the criminal statute could encompass both conduct that involves moral turpitude and conduct that does not, *and* there is a case in which the relevant criminal statute has been applied to the latter category of conduct, the adjudicator cannot categorically treat all convictions under that statute as convictions for crimes that involve moral turpitude. *See id*. at 185-88, 193.

The Supreme Court recently adopted the "realistic probability" approach in *Duenas-Alvarez*, where the question was whether a conviction under a California theft statute constituted a "theft offense" within the meaning of section 101(a)(43)(G) of the Act, rendering the alien removable under section 237(a). The alien contended that the theft crime did not necessarily constitute such an offense, because the California statute was broader in scope than the "theft offense" category covered by section 101(a)(43)(G). In support of that argument the alien cited several cases in which California courts had used expansive language in describing the statute. After parsing these cases, the Court rejected the alien's reliance on them:

> [I]n our view, to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic possibility, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Duenas-Alvarez*, 549 U.S. at 193. The Court concluded that the alien had failed to show anything "special" about the California statute that would support its application outside the general scope of the relevant Federal crime, and thus found him removable. *Id*.

*Duenas-Alvarez* was not a moral turpitude case, and in any event its approach to categorical inquiries would not bind the Department here because moral turpitude determinations turn on the Department's application of ambiguous statutory text. *See Brand X*, 545 U.S. at 982. That said, the *Duenas-Alvarez* Court's adoption of the "realistic probability" approach is grounded in the realization that immigration penalties ought to be based on criminal laws as they are actually applied. *See, e.g.*, *Jordan v. DeGeorge*, 341 U.S. 223, 227 (1951) ("In deciding the case before the Court, we look to the manner in which the term 'moral turpitude' has been applied by judicial decision."). And the question in *Duenas-Alvarez*—whether a conviction under a particular State statute was within the scope of a general category of offenses for immigration purposes—is similar to the question presented here. I thus find the analysis in *Duenas-Alvarez* persuasive and conclude that, in evaluating whether an alien's prior offense is categorically one that involved moral turpitude, immigration judges should determine whether there is a "realistic probability, not a theoretical possibility," that a State or Federal criminal statute would be applied to reach conduct that does not involve moral turpitude. *Duenas-Alvarez*, 549 U.S. at 193.

Like *any* categorical approach, however, the realistic probability approach cannot assure proper resolution of all moral turpitude inquiries: It provides no answer where a statute encompasses both conduct that involves moral turpitude *and* conduct that does not (as evidenced by its application to the latter category in an actual case). Recognizing this weakness of a pure categorical approach, the Department and many courts have proceeded to a second stage, or "modified categorical," inquiry pursuant to which adjudicators consider whether the alien's record of conviction evidences a crime that in fact involved moral turpitude. *See, e.g.*, *Wala v. Mukasey*, 511 F.3d 102, 109 (2d Cir. 2007) (where an alien's statute of conviction "encompasses offenses that may or may not involve moral turpitude . . . . [we] proceed under the modified categorical approach to examine whether [the alien's] record of conviction necessarily admits facts establishing the elements of a [crime involving moral turpitude]").

I agree that adjudicators should engage in such a second-stage inquiry when necessary and conclude (as have many courts) that they should do so in every case where (because the criminal statute in issue has at some point been applied to conduct that did not involve moral turpitude) the categorical

analysis does not end the moral turpitude inquiry.[2] Most courts, however, have limited this second-stage inquiry to the alien's record of conviction, including documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the plea transcript. *See, e.g.*, *Nicanor-Romero*, 523 F.3d at 1007 ("We do not look beyond such documents . . . to determine what particular underlying facts might have supported [the prior] conviction.") (internal quotation marks and citations omitted). In my view, when the record of conviction fails to show whether the alien was convicted of a crime involving moral turpitude, immigration judges should be permitted to consider evidence beyond that record if doing so is necessary and appropriate to ensure proper application of the Act's moral turpitude provisions. I reach these conclusions for several reasons.

First, the documents generally considered part of the formal record of conviction typically focus only on the charging elements of a specific criminal offense. But moral turpitude is not an element of an offense. *See, e.g.*, *Ali*, 521 F.3d at 742. And although in many, if not most, cases (for example, cases in which proof of fraudulent intent is required for conviction), examination of the alien's record of conviction may establish that the alien was in fact convicted of a crime involving moral turpitude, there are other cases (such as the instant one) in which an examination of the formal record by itself does not yield an answer to the question. *See* Bd. Op. at 4 n.5 (noting that respondent's "record of conviction does not contain any information regarding the underlying conduct which gave rise to respondent's conviction"); *see also* Part III *infra*. To limit the information available to immigration judges in such cases means that they will be unable to determine whether an alien's crime actually "involv[ed]" moral turpitude. Section 212(a)(2)(A)(i)(I) of the Act; *see, e.g.*, Bd. Op. at 4 n.5; *Nicanor-Romero*, 523 F.3d at 1007-08.

This restriction is hard to square with the text of the Act. *See, e.g.*, *Limtiaco v. Camacho*, 127 S. Ct. 1413, 1418 (2007). The relevant provisions contemplate a finding that the particular alien did or did not commit a crime involving moral turpitude before immigration penalties are or are not applied. Section 212(a)(2)(A)(i)(I), the inadmissibility provision at issue in this case, refers to "any alien convicted of, or who admits having committed, or who admits committing *acts* which constitute the essential elements of a crime involving moral turpitude." (Emphasis added.) Section 237's removability

---

[2] If an immigration judge determines, based on application of the realistic probability approach, that a prior conviction is categorically a crime involving moral turpitude, there is no reason to proceed to a second stage. The same would be true if the immigration judge were able to determine at the first stage that a prior conviction categorically was *not* a crime involving moral turpitude—i.e., if none of the circumstances in which there is a realistic probability of conviction involves moral turpitude.

provisions similarly pertain only to "[a]ny alien who is convicted of a crime involving moral turpitude" under certain enumerated circumstances, one of which relates to the alien's date of admission—a fact that would not typically be reflected in a criminal record of conviction. Sections 237(a)(2)(A)(i)-(ii) of the Act. To impose evidentiary limitations with the result that immigration penalties under section 212(a) or section 237 apply to aliens whose crimes did *not* involve moral turpitude, or with the result that aliens whose crimes *did* involve moral turpitude escape those penalties, is in tension with the text of those sections.

Related provisions of the Act further support the conclusion that an individualized moral turpitude inquiry is warranted where a categorical analysis is not conclusive. *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (stating that it is a "cardinal rule that a statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context") (citation omitted). The Act's evidentiary provisions, for example, call for analysis of whether "the alien" in a particular proceeding is or is not subject to the Act's moral turpitude provisions. Section 240(c)(2)-(3) of the Act, 8 U.S.C. § 1229a(c)(2)-(3) (2006). By their terms, these provisions indicate that the statute should be applied only to aliens who have themselves committed acts that trigger the provisions and their associated immigration consequences.

Because restricting administrative moral turpitude inquiries to an alien's formal record of conviction is not compelled by the Act—and indeed, appears to be in some tension with it—it is worth examining the grounds on which the Department and the courts have justified this restriction. There are two. First, courts have carried over to the immigration context the Supreme Court's holdings in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), which limit a sentencing court's inquiry into the nature of prior convictions for purposes of recidivist enhancements in Federal criminal cases. *See Ali*, 521 F.3d at 743 (citing cases that "carry over to immigration proceedings an approach familiar to the federal judiciary from criminal prosecutions"). Second, courts have judged that further administrative inquiry would, even if allowed, impose on the Department an unacceptably "oppressive administrative burden of scrutinizing the specific conduct giving rise to criminal offenses." *Michel v. INS*, 206 F.3d 253, 264 (2d Cir. 2000) (citing *Matter of Pichardo*, 21 I&N Dec. 330, 335-36 (BIA 1996)). As the Seventh Circuit recently held in an opinion by Judge Easterbrook, however, neither of these grounds withstands close scrutiny. *See Ali*, 521 F.3d at 741-42.

To begin with, the rationale for the limits *Taylor* and *Shepard* impose on factual inquiries in criminal sentencing cases does not carry over to the immigration question at hand. As Judge Easterbrook explained, the Supreme

Court gave "two principal reasons" for limiting inquiry into prior convictions in the sentencing context: "[I]n *Taylor* it stressed the benefits of simple application, so that sentencing not be burdened by a retrial of the original prosecution, and in *Shepard* it stressed the allocation of tasks between judge and jury under the Sixth Amendment." *Id.* at 741. But "[n]either of these reasons applies to immigration proceedings." *Id.* First, immigration proceedings "are not criminal prosecutions, so the Sixth Amendment . . . [does] not come into play." *Id.* (citations omitted). Second, "how much time the agency wants to devote to the resolution of particular issues is . . . a question for the agency itself rather than the judiciary." *Id.* (citations omitted).

Moreover, there is good reason *not* to apply *Taylor* and *Shepard* when assessing moral turpitude. Limiting inquiry to the record of conviction—and little else—makes some sense when a simple examination of the elements of a prior conviction usually will yield the necessary answer, as is true in the criminal sentencing cases governed by *Taylor* and *Shepard*. But limiting inquiry in that manner makes much less sense when the answer turns on factors beyond the elements of the prior crime. That is true here, because "moral turpitude" is not an element of any criminal offense. As Judge Easterbrook explained in *Ali*, "[t]he need to decide whether a crime is one of 'moral turpitude' does not have a parallel in criminal cases and may require some additional information, since the charging papers that led to the prior conviction are not framed with such classifications in mind (for 'moral turpitude' just isn't relevant to the criminal prosecution; it is not as if 'turpitude' were an element of an offense)." *Ali*, 521 F.3d at 741-42.

This conclusion is supported by a recent Board decision on a different but related issue. In *Matter of Babaisakov*, 24 I&N Dec. 306, 309-10 (BIA 2007), the Board held that an immigration judge may look beyond the record of conviction in determining whether an alien has committed a certain type of aggravated felony, namely, "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." Section 101(a)(43)(M)(i) of the Act. The Board justified this holding based on the fact that the statute "requires a separate finding as to loss that is *not* tied to the elements of any State or Federal criminal statute." *Matter of Babaisakov*, *supra*, at 309 (emphasis added). With respect to this "additional 'nonelement' factor of victim loss," the Board reasoned, the evidentiary limitations of *Taylor* and *Shepard* neither apply nor make sense. The evidence allowed by *Taylor* and *Shepard* "*may* serve as the best source of information for nonelement facts about a crime," the Board wrote, but "[n]o wooden rule . . . can answer that question in advance." *Id*. at 318 (emphasis added). Thus, the Board held that immigration judges are free, in cases involving the

loss provision, to "consider any evidence, otherwise admissible in removal proceedings, including witness testimony, bearing on the loss to the victim." *Id.* at 321.

*Babaisakov* involved the definition of an aggravated felony, not a determination of whether a prior crime is a crime involving moral turpitude, and as a result is not directly applicable. Nevertheless, I find the Board's analysis in that case persuasive and appropriate here as well: Like the determination of loss at issue in *Babaisakov*, "the moral-turpitude classification" at issue in this case "stands apart from the elements of the [prior criminal] offense." *Ali*, 521 F.3d at 743. Thus, for the foregoing reasons I conclude that the evidentiary limitations of *Taylor* and *Shepard* do not apply for purposes of making moral turpitude determinations. That leaves only the second justification for limiting inquiry in moral turpitude cases: that inquiry beyond the record of conviction would impose on the Department an unacceptably "oppressive administrative burden of scrutinizing the specific conduct giving rise to criminal offenses." *Michel*, 206 F.3d at 264. As Judge Easterbrook noted in *Ali*, however, how much time the Department wants to devote to these inquiries is "a question for the agency itself rather than the judiciary." 521 F.3d at 741.

I turn therefore to whether the administrative burdens associated with inquiries beyond the record of conviction should preclude such inquiries (as the Board and some courts have suggested) and conclude that those burdens should not for several reasons. First, although administrative efficiency is undeniably important, it is "secondary to the determination and enforcement of" statutory language and "obvious legislative intent." *Marciano*, 450 F.2d at 1029 (Eisele, J., dissenting). As noted, reading the Act's provisions to apply to aliens whose individual crimes did not actually involve moral turpitude—or failing to apply these provisions to aliens whose crimes actually did involve moral turpitude—is in tension with the statutory language. Allowing for inquiry beyond the record of conviction would result in more accurate determinations of who falls within the scope of the statute, and would better accord with the statute's demands for individualized adjudications. It would also produce more uniform results nationwide, because the answer to whether an alien's prior conviction was for a crime involving moral turpitude would be less likely to turn on the drafting of a particular criminal statute or a jurisdiction's record-keeping practices.

Moreover, I do not believe, as the Board has suggested, that limiting inquiry to the record of conviction is the "only" administratively workable solution to deciding moral turpitude cases that cannot be decided at the categorical stage, or that permitting inquiry beyond the record of conviction in such cases would provide "no clear stopping point" to complete relitigation of past crimes. *Matter of Pichardo*, *supra*, at 336. Immigration judges are

well versed in case management, and as this case demonstrates, *see* Part III *infra*, the answer to a single question (here, whether respondent knew or should have known his victim's age) may reveal a critical piece of information that is not in the record of conviction and that would ensure correct application of the Act's moral turpitude provisions. And in any event, allowing inquiry beyond the record of conviction does not mean that the parties would be free to present "any and all evidence bearing on an alien's conduct leading to the conviction." *Matter of Pichardo*, *supra*, at 335. The sole purpose of the inquiry is to ascertain the nature of a prior conviction; it is not an invitation to relitigate the conviction itself.[3]

Further, although *Matter of Babaisakov*, *supra,* at 318*,* correctly stated that "[n]o wooden rule" should govern an immigration judge's resort to information beyond the record of conviction, a hierarchy of evidence certainly may be appropriate to ensure administrative workability and to avoid engaging in a retrial of the alien's prior crime. In many, if not most, cases, the judge will not have to go beyond the record of conviction, which includes the transcript of any plea. And where a party meets, or fails to meet, its burden of proof on an issue related to application of the Act's moral turpitude provisions based solely on the record of conviction and documentary evidence, the immigration judge need not consider additional evidence or testimony except when and to the extent he or she determines that it is necessary.[4]

---

[3] For example, an alien who was convicted under a criminal statute that requires proof of fraudulent intent (which has universally been considered evidence of moral turpitude, *see, e.g.*, *Jordan v. DeGeorge*, 341 U.S. 223) cannot avoid categorical treatment of his conviction as a crime involving moral turpitude by arguing that he did not actually have such intent when he committed the crime. In such a case, an immigration judge is entitled to rely on the fact of conviction as evidence that the judge or jury in the prior criminal proceeding determined that the alien committed all elements required for conviction, including the element of intent to defraud. Similarly, an alien convicted under a child sex offense statute that allows for a mistake-of-age defense, *see infra* Part III, cannot avoid categorical treatment of his conviction as a crime involving moral turpitude by arguing that he believed his victim was a consenting adult. The immigration judge in that case is entitled to rely on the fact of conviction as evidence that the judge or jury in the criminal proceeding properly determined that the alien knew, or reasonably should have known, his victim was a child, and thus that the alien committed a crime involving moral turpitude.

[4] Whether the alien or the Government bears the burden of proof on the immigration question in issue may have some bearing on application of the moral turpitude framework outlined in this opinion. In inadmissibility cases such as this one, where the alien bears the burden of proof, *see* section 240(c)(2)(A) of the Act, application of the framework will be relatively straightforward: It would be the alien's burden, in the first stage of the inquiry, to show that the criminal statute under which he had been convicted has actually been

(continued...)

In short, to determine whether an alien's prior conviction triggers application of the Act's moral turpitude provisions, adjudicators should: (1) look first to the statute of conviction under the categorical inquiry set forth in this opinion and recently applied by the Supreme Court in *Duenas-Alvarez*; (2) if the categorical inquiry does not resolve the question, look to the alien's record of conviction, including documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, and the plea transcript; and (3) if the record of conviction does not resolve the inquiry, consider any additional evidence the adjudicator determines is necessary or appropriate to resolve accurately the moral turpitude question. This opinion does not, of course, extend beyond the moral turpitude issue—an issue that justifies a departure from the *Taylor/Shepard* framework because moral turpitude is a non-element aggravating factor that "stands apart from the elements of the [underlying criminal] offense." *Ali*, 521 F.3d at 743. And, again, looking to the facts of an individual case to determine moral turpitude for immigration purposes does not mean that courts or immigration judges may relitigate or redetermine issues decided in prior criminal proceedings. Aliens may not challenge—at any stage of the moral turpitude inquiry—determinations or facts that were necessary to their prior convictions.

---

(...continued)

applied to conduct that did not involve moral turpitude and, in the second stage, that his own conviction involved conduct that did not involve moral turpitude. In removal cases, where the Government bears the burden of proof, *see* section 240(c)(3)(A) of the Act, application of the framework may be more complicated. When the criminal statute requires proof of an element or fact that evidences moral turpitude, it will be easy for the Government to sustain its burden. Because such a statute will ordinarily be subject to categorical treatment under the realistic probability approach, it is the alien who must "point to his own case or other cases" in which a person was convicted without proof of the statutory element that evidences moral turpitude. *See Duenas-Alvarez*, 549 U.S. at 193 (explaining that, because Duenas-Alvarez conceded that the State theft statute in issue required proof that the defendant intended to deprive a rightful owner of property—the same criminal intent as the Federal predicate for the Government's removal charge—he had to "show something *special* about" California's application of the statute to avoid categorical treatment) (emphasis in original). By contrast, where a criminal statute (such as the one in issue in this case) does not require proof of an element or fact that categorically evidences moral turpitude, it will be more difficult for the Government to prove that moral turpitude necessarily inheres in a conviction and thus that categorical treatment is appropriate. In such circumstances, the Government can meet its burden by proving, in the second stage of the inquiry, that the alien's individual conviction was for a crime that in fact involved moral turpitude.

III.

Applying the foregoing framework to the facts of this case, I vacate the Board's decision and remand for reconsideration consistent with this opinion. The question whether respondent's conviction pursuant to Texas Penal Code § 21.11(a)(1) triggers the Act's bar on admissibility first requires a categorical examination of that statute. Under the categorical approach outlined above, *see* Part II.B, I must therefore determine whether moral turpitude necessarily inheres in the cases that have a "realistic probability" of being prosecuted pursuant to section 21.11(a)(1).

To answer this query, it is necessary briefly to address the proper definition of moral turpitude, because that definition exposes a troubling element of the Board's analysis. The Board concluded that moral turpitude does not necessarily inhere in a conviction under Texas Penal Code § 21.11(a)(1) because the statute criminalizes sexual contact with minors that falls short of rape. *See* Bd. Op. at 3-4 ("In contrast to statutory rape, which typically involves penetration or something similar, the sexual conduct encompassed by [Texas Penal Code] § 21.11(a)(1) potentially involves much less intrusive contact."). In so holding, the Board suggested that whether a sexual offense with a minor involves moral turpitude turns on the severity of the sexual contact at issue. *See id.* I disagree.

In my view, so long as the perpetrator knew or should have known that the victim was a minor, *any* intentional sexual contact by an adult with a child involves moral turpitude. Such contact is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general," *Hamdan v. INS*, 98 F.3d 183, 185-86 (5th Cir. 1996) (quoting Department precedent), when measured "in terms either of the magnitude of the loss that [it] cause[s] or the indignation that [it] arouse[s] in the law-abiding public," *Wei Cong Mei v. Ashcroft*, 393 F.3d 737, 740 (7th Cir. 2004). The sexual abuse of children destroys, in a way that cannot be described as anything other than "base" and "vile," the trust and innocence of society's most vulnerable members. *See, e.g.*, *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003) ("The sexual abuse of children is heinous beyond words. It is intolerable . . . reprehensible . . . [and] destructive of young lives."); *Nicanor-Romero*, 523 F.3d at 1013 (Bybee, J., dissenting) ("Children in particular—because of their naiveté, their dependence on adults, and their inability to understand, flee, or resist such advances—are vulnerable to adults who seek to take advantage of them sexually. Thus, we find such conduct especially repulsive and worthy of the severest moral opprobrium."); *cf. New York v. Ferber*, 458 U.S. 747, 756-57, 763 (1982) ("It is evident beyond the need for elaboration that a State's interest in 'safeguarding the

physical and psychological well-being of a minor' is 'compelling'"); *Osborne v. Ohio*, 495 U.S. 103, 109 (1990) (concluding that child pornography, unlike adult pornography, does not merit First Amendment protection).

That said, whether the perpetrator knew or should have known the victim's age is a critical factor in determining whether his or her crime involved moral turpitude for immigration purposes. A finding of moral turpitude under the Act requires that a perpetrator have committed the reprehensible act with some form of scienter. *See, e.g.*, *Partyka*, 417 F.3d at 414 ("[T]he hallmark of moral turpitude is a reprehensible act committed with an appreciable level of consciousness or deliberation"); *Wei Cong Mei v. Ashcroft*, 393 F.3d at 740 ("[A] person who deliberately commits a serious crime is regarded as behaving immorally and not merely illegally") (emphases omitted); *Michel v. INS*, 206 F.3d 253, 263 (2d Cir. 2000) ("corrupt scienter is the touchstone of moral turpitude," hence the Board's "long-standing" rule that, "where knowledge is a necessary element of a crime under a particular criminal statute, moral turpitude inheres in that crime").[5] Sexual contact that could be legal and morally acceptable between consenting adults constitutes criminal conduct involving moral turpitude when visited upon someone the perpetrator knows

---

[5] The foregoing general definition of a crime involving moral turpitude—namely, that a crime involving moral turpitude involves both reprehensible conduct and some form of scienter—encompasses and describes existing Board precedents classifying many different crimes, including various species of fraud and corruption crimes, as crimes involving moral turpitude when those crimes are committed willfully. *See, e.g.*, *Matter of Kochlani*, 24 I&N Dec. 128, 130-31 (BIA 2007) (explaining that, although "crimes that have a specific intent to defraud as an element have always been found to involve moral turpitude, [the Board has] also found that certain crimes are inherently fraudulent and involve moral turpitude even though they can be committed without a specific intent to defraud" where a conviction requires proof that the defendant *willfully or knowingly* committed an act (in *Kochlani*, intentionally trafficking in known counterfeit goods) that causes "significant societal harm"); *Matter of Tejwani*, 24 I&N Dec. 97, 98 (BIA 2007) (treating a conviction for money laundering as a crime involving moral turpitude because the statute in question required both that the perpetrator *knew* the money in issue represented the proceeds of criminal conduct and that the person *intentionally* exchanged or handled the money "to conceal or disguise" its criminal origins); *Matter of Flores*, 17 I&N Dec. 225, 229 (BIA 1980) (treating as a crime involving moral turpitude the *deliberate* selling or use of counterfeit documents that the perpetrator knew were counterfeit). The foregoing general definition also encompasses the many judicial precedents recognizing that crimes involving moral turpitude involve reprehensible conduct that is committed intentionally or with some other form of scienter such as willfulness or recklessness. *See, e.g.*, *Partyka*, 417 F.3d at 414 (approving of Board decisions concluding that moral turpitude inheres in the commission of certain crimes "even if one acts not with intent, but with recklessness, [where] 'the definition of recklessness requires an actual awareness of the risk created by the criminal violator's actions'") quoting *Matter of Medina*, 15 I&N Dec. 611, 614 (BIA 1976))).

or should know is a child. Thus, it is proper to make a categorical finding that a defendant's conduct involves moral turpitude when that conduct results in conviction on the charge of intentional sexual contact with a person the defendant knew or should have known was a child.

Accordingly, convictions obtained under statutes that limit convictions to defendants who knew, or reasonably should have known, that their intentional sexual acts were directed at children categorically should be treated as convictions for crimes involving moral turpitude.[6] The inclusion of a mistake-of-age defense—that is, an affirmative defense that the defendant reasonably believed that his or her victim was not a child at the time of the offense—ensures that individuals will be convicted only if they willfully or knowingly directed sexual conduct towards someone they knew, or reasonably should have known, was a child. *See, e.g.*, 18 U.S.C. § 2243(c)(1) (2006) (establishing as an affirmative defense to the charge of engaging in a sexual act with a person under the age of 16 that "the defendant reasonably believed that the other person had attained the age of 16 years").

The Texas statute at issue in this case applies only to intentional sexual contact. *See* Texas Penal Code § 21.11(a)(2) (requiring the "intent to arouse or gratify the sexual desires of any person"). But it does not, on its face,

---

[6] I recognize that some judicial decisions have relied on the "common" or "usual" case version of the categorical approach to classify convictions for statutory rape as ones involving moral turpitude whether or not the statutes of conviction allowed for a mistake-of-age defense. *See, e.g.*, *Castle v. INS*, 541 F.2d 1064, 1066 (4th Cir. 1976); *Marciano*, 450 F.2d at 1025; *Pino v. Nicolls*, 119 F. Supp. 122, 128 (D. Mass), *aff'd*, 215 F.2d 237, 240 (1st Cir.), *rev'd on other grounds sub nom. Pino v. Landon*, 349 U.S. 901 (1955). If a particular statute does not qualify categorically as a crime involving moral turpitude under the "reasonable probability" approach adopted in this decision, the adjudicator can consult the record of conviction or other evidence established in the case to determine whether the conviction is for a crime involving moral turpitude. I also note that, to the extent the foregoing judicial decisions concluded that aliens were deportable (rather than inadmissible) for having committed crimes involving moral turpitude, application of the moral turpitude methodology in this opinion would not necessarily change those results. A statutory rape conviction may constitute "sexual abuse of a minor"—an "aggravated felony" under section 101(a)(43)(A) of the Act that renders an alien deportable—regardless of whether that conviction would qualify as a conviction for a crime involving moral turpitude. *See, e.g.*, *Mugalli v. Ashcroft*, 258 F.3d 52, 61 (2d Cir. 2001); *Matter of Rodriguez-Rodriguez*, 22 I&N Dec. 991 (BIA 1999); *but cf. Estrada-Espinoza v. Mukasey*, ___ F.3d ___, 2008 WL 4615681 (9th Cir. Oct. 20, 2008) (en banc). And as this opinion makes clear, the framework it adopts for moral turpitude cases governs only immigration decisions based on the Act's moral turpitude provisions and does not govern the scope or application of the aggravated felony ground for sexual abuse of a minor under section 101(a)(43)(A) of the Act.

provide for a mistake-of-age defense. It is therefore possible to imagine, as the Board did, a case in which a defendant could be convicted even though his conduct did not involve moral turpitude. *See, e.g.*, *Nicanor-Romero*, 523 F.3d at 1001 (holding that certain acts of "sexual predation" of a minor criminalized by a California statute did not involve moral turpitude under the Act because the acts in question involved "sexual interest that would be natural and normal if motivated by conduct directed at an 18-year old," and because the statute did not require that the defendant knew, or reasonably should have known, that the acts were directed at a child); *Quintero-Salazar v. Keisler*, 506 F.3d 688 (9th Cir. 2007) (similar). Imagination is not, however, the appropriate standard under the framework set forth in this opinion. Instead, the question is whether there is a "realistic probability, not a theoretical possibility," that the Texas statute would be applied to reach conduct that does not involve moral turpitude. *Duenas-Alvarez*, 549 U.S. at 193.

In this case, the answer to that question is yes. In *Johnson v. State*, 967 S.W.2d 848, 849 (Tex. Crim. App. 1998) (en banc), the Texas Court of Criminal Appeals rejected a 19-year-old defendant's contention that he should not be convicted of criminal sexual contact with a child under section 21.11(a)(1) because his victim and her friend both told him that the victim was 17, and because the victim in fact appeared older than her age. Because Texas Penal Code § 21.11(a)(1) has been applied to conduct that does not involve moral turpitude (the defendant in *Johnson* was convicted despite his contention that he had no reason to know that his sexual conduct was directed at a child), respondent's conviction cannot categorically be treated as one that did involve moral turpitude. *See Duenas-Alvarez*, 549 U.S. at 193. I therefore agree with the Board that an analysis of Texas Penal Code § 21.11(a)(1) fails to establish that respondent's conviction qualifies categorically as a crime involving moral turpitude, although not for the reasons given by the Board.

This categorical determination, however, does not end the moral turpitude inquiry. Instead, where, as here, the categorical inquiry does not resolve the moral turpitude question, an adjudicator should engage in a modified categorical inquiry, considering whether the facts of the alien's prior conviction in fact involved moral turpitude. In so doing, the adjudicator should look first to the alien's record of conviction—including the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the plea transcript—and if the record of conviction does not resolve the inquiry, consider any additional evidence or factfinding the adjudicator determines is necessary or appropriate to resolve accurately the moral turpitude question.

In this case, the Board noted that respondent's "record of conviction does not contain any information regarding the underlying conduct which gave rise to respondent's conviction," Bd. Op. at 4 n.5, but declined to engage in any further inquiry because it believed that a beyond-the-record-of-conviction

analysis was prohibited, *id.* at 4. Because the Board declined to consider whether respondent's crime actually involved moral turpitude, I remand this case for further consideration by the Board. If the Board deems further inquiry appropriate, it may in turn remand the case to the Immigration Judge for additional proceedings consistent with this opinion.

The inquiry on remand need not be administratively burdensome. In a case involving sexual abuse, a simple inquiry regarding the alien's knowledge of the victim's age might conclusively resolve the moral turpitude question. If, for example, probative evidence, such as a birth certificate or an admission by the alien, establishes that the victim was a young child, this fact would prove that the alien's sexual acts were directed at a person he knew, or reasonably should have known, was a child and thus that the alien's conviction was for a crime involving moral turpitude. The same would be true if the alien and the victim had a relationship (familial or otherwise) from which it could be shown that the alien knew or should have known the victim's actual age. In any such inquiries in this case, the burden is on respondent to establish "clearly and beyond doubt" that he is "not inadmissible." Section 240(c)(2)(A) of the Act; *see, e.g.*, *Kirong v. Mukasey*, 529 F.3d 800 (8th Cir. 2008).

## CONCLUSION

For the reasons set forth above, I remand this matter to the Board so it may reconsider, consistent with this opinion, whether the crime respondent committed involved moral turpitude. In the event the Board determines that respondent's conviction does not qualify as a crime involving moral turpitude that renders him inadmissible, it can and should consider the factual circumstances of his crime in determining whether to grant his application for discretionary relief from removal.