# Matter of Pedro Josue JIMENEZ-CEDILLO, Respondent

*Decided February 27, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Sexual solicitation of a minor in violation of section 3-324(b) of the Maryland Criminal Law with the intent to engage in an unlawful sexual offense under section 3-307 is categorically a crime involving moral turpitude. *Matter of Jimenez-Cedillo*, 27 I&N Dec. 1 (BIA 2017), *reaffirmed*.

FOR RESPONDENT: Benjamin R. Winograd, Esquire, Alexandria, Virginia

FOR THE DEPARTMENT OF HOMELAND SECURITY: Peter Gannon, Associate Legal Advisor

BEFORE: Board Panel: WENDTLAND, GREER, and O'CONNOR, Board Members.

GREER, Board Member:

This case was last before us on July 28, 2017, when we denied the respondent's motion to reconsider our April 6, 2017, precedent decision in *Matter of Jimenez-Cedillo*, 27 I&N Dec. 1 (BIA 2017), where we dismissed his appeal from an Immigration Judge's order. On March 20, 2018, the United States Court of Appeals for the Fourth Circuit remanded the case for us to further explain our reasoning for concluding that the respondent is removable under section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2018), as an alien convicted of a crime involving moral turpitude, and is therefore ineligible for cancellation of removal pursuant to section 240A(b)(1)(C) of the Act, 8 U.S.C. § 1229b(b)(1)(C) (2018). The record will be remanded to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a 23-year-old native and citizen of Mexico who conceded that he is removable under section 212(a)(6)(A)(i) of the Act as an alien who is present in the United States without having been admitted or paroled. On February 11, 2015, he was convicted under section 3-324(b) of the Maryland Criminal Law upon pleading guilty to knowingly soliciting a minor, or a police officer who was posing as a minor, with the intent to

engage in unlawful sexual activity in violation of section 3-307 of the Maryland Criminal Law.[1]  The record of conviction reflects that in October 2014, the respondent communicated via computer and text with an undercover police officer who was posing as a 14-year-old deaf girl, and he arranged for them to meet.  He was arrested on November 3, 2014, when he appeared at the meeting point with a soda, condoms, and lubricant.

In *Matter of Jimenez-Cedillo*, 27 I&N Dec. at 4, we held that the respondent's offense is categorically a crime involving moral turpitude.  In reaching that conclusion, we examined the framework for determining whether a crime involves moral turpitude that the Attorney General set forth in *Matter of Silva-Trevino*, 24 I&N Dec. 687 (A.G. 2008) ("*Silva-Trevino I*"), *vacated*, *Matter of Silva-Trevino*, 26 I&N Dec. 550 (A.G. 2015) ("*Silva-Trevino II*").  We subsequently recognized the Attorney General's rule that "a crime involving intentional sexual conduct by an adult with a child involves moral turpitude *as long as the perpetrator knew or should have known that the victim was a minor*."  *Matter of Silva-Trevino*, 26 I&N Dec. 826, 834 (BIA 2016) ("*Silva-Trevino III*") (emphasis added).  However, we noted that our decision there did "not reach crimes commonly known as 'statutory rape,'" which "do not require a perpetrator to have knowledge of the age of the victim," and we reserved "the question whether they are crimes involving moral turpitude."  *Id.* at 834 n.9.

In *Matter of Jimenez-Cedillo*, 27 I&N Dec. at 5, we acknowledged that in *Silva-Trevino III*, we had agreed with the Attorney General's position, but we noted that "our decision did not foreclose the possibility that moral turpitude will inhere in some crimes, even if the relevant statute lacks an element that requires the perpetrator to have some culpable mental state

---

1   Section 3-324(b) of the Maryland Criminal Law provides:

> A person may not, with the intent to commit a violation of . . . § 3-307 of this subtitle. . . , knowingly solicit a minor, or a law enforcement officer posing as a minor, to engage in activities that would be unlawful for the person to engage in under . . . § 3-307 of this subtitle . . . .

Section 3-307 provides, in pertinent part:

> A person may not:
> . . .
>    (3) engage in sexual contact with another if the victim is under the age of 14 years, and the person performing the sexual contact is at least 4 years older than the victim;
>    (4) engage in a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is at least 21 years old; or
>    (5) engage in vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at least 21 years old.

regarding the victim's age." As we will explain further, we then clarified our prior decision and held that

> a sexual offense in violation of a statute enacted to protect children is a crime involving moral turpitude where the victim is particularly young—that is, under 14 years of age—or is under 16 and the age differential between the perpetrator and victim is significant, or both, even though the statute requires no culpable mental state as to the age of the child.

*Id.* We therefore determined that "moral turpitude inheres in all violations of section 3-307" of the Maryland Criminal Law, noting that "[s]ections 3-307(a)(1) and (2) necessarily involve sexual contact with a victim whose lack of consent is either explicit or implicit," and that "a defendant can be convicted under sections 3-307(a)(3), (4), and (5) even if there was a reasonable mistake as to the victim's age." *Id.* at 4.

The United States Court of Appeals for the Fourth Circuit concluded that we had "abandoned the *Silva-Trevino* rule that an offense must require proof of a culpable mental state as to the victim's age in order to qualify as a crime involving moral turpitude." *Jimenez-Cedillo*, 885 F.3d at 297. Finding that we put forth a new position "that mental culpability as to age is *not* required before a law prohibiting the sexual touching of a minor may be deemed a crime involving moral turpitude," the court remanded for us to provide a reasoned basis for that change. *Id.* at 298, 300. Upon our consideration on remand, we will reaffirm our decision.

Further, because the court specified that our decision represents a change in position and that our "prior policy may have 'engendered serious reliance interests' in aliens [such as the respondent,] who pled guilty to certain sexual offenses under the *Silva-Trevino* regime," we will apply it prospectively in this circuit. *Id.* at 299. *See generally Matter of Cordero-Garcia*, 27 I&N Dec. 652, 655–57 (BIA 2019) (discussing retroactivity). We will not decide the question of retroactivity in other circuits at this time. *See Matter of J-G-*, 26 I&N Dec. 161, 170 (BIA 2013) (stating that an agency is not required to make findings on issues that are unnecessary to the result reached).

## II. ANALYSIS

### A. Online Solicitation of Children for Sexual Contact

Sexual offenses against minors have long been considered pernicious crimes that Congress intentionally included as aggravated felonies for immigration purposes, along with murder and rape. *See* section 101(a)(43)(A) of the Act, 8 U.S.C. § 1101(a)(43)(A) (2018). The problem of online sexual predators has only existed in the last few decades, but it has

grown exponentially, with millions of children gaining unrestricted access to the internet each year, at increasingly younger ages. *See* Elana T. Jacobs, *Online Sexual Solicitation of Minors: An Analysis of the Average Predator, His Victims, What Is Being Done and Can Be Done To Decrease Occurrences of Victimization*, 10 Cardozo Pub. L. Pol'y & Ethics J. 505, 506–07 (2012).

In response to this growing problem, every State in the country has passed a law criminalizing this behavior in some form. *See, e.g.*, Daniel Pollack & Andrea MacIver, *Understanding Sexual Grooming in Child Abuse Cases*, 34 No. 11 Child L. Prac. 161, 167 n.21 (2015). In 1998, the Department of Justice created the Internet Crimes Against Children Task Force Program "to help federal, state, and local law enforcement agencies enhance their investigative responses to offenders who use the Internet, online communication systems or computer technology to exploit children." Dep't of Justice, Office of Pub. Affairs, Press Release No. 18-765, *More Than 2,300 Suspected Online Child Sex Offenders Arrested During Operation "Broken Heart,"* https://www.justice.gov/opa/pr/more-2300-suspected-online-child-sex-offenders-arrested-during-operation-broken-heart (June 12, 2018).

Legislative responses have emerged because the damage that sexual contact does to young children and adolescents is substantial. There has been wide recognition of

> the significance of the potential harm caused by sexual activity involving children, even with their consent. These risks involve potential physical harm, including the risk of venereal diseases [and] trauma . . . .
>   Perhaps most significantly, an adult who engages in sexual activity with a child may cause the child serious psychological damage, regardless of the child's maturity or lack of chastity. Since the adult will almost always be more physically mature and experienced in sexual matters, the risk of sexual exploitation is significant. Moreover, the effects on children of sexual exploitation often follow the child into adulthood, with societal consequences as well.

*Maxwell v. State*, 895 A.2d 327, 335 & n.6 (Md. Ct. Spec. App. 2006) (quoting *Owens v. State*, 724 A.2d 43, 52–53 (Md. 1999)).

## B. *Matter of Silva-Trevino*

In this larger context of efforts to combat sexual harms against children, the Attorney General issued *Matter of Silva-Trevino I*, which involved the offense of indecency with a child. The first and second steps of the Attorney General's three-step analysis were modeled on the categorical approach and

the modified categorical approach.[2]  *Matter of Silva-Trevino I*, 24 I&N Dec. at 706.  The third step permitted the fact-finder to consider all available evidence, including evidence outside the record of conviction, to determine whether the alien knew or should have known the age of the victim and, therefore, whether the conviction was for conduct involving moral turpitude. *Id.* at 706 ("[I]t is proper to make a categorical finding that a defendant's conduct involves moral turpitude when that conduct results in conviction on the charge of intentional sexual contact with a person the defendant knew or should have known was a child.").

In proceedings on remand, the Immigration Judge considered evidence outside the record of conviction pursuant to the third step of the analysis and found that the alien's offense was a crime involving moral turpitude because he should have known that his victim was a child.  *See Silva-Trevino II*, 26 I&N Dec. at 551; *see also Matter of Guevara Alfaro*, 25 I&N Dec. 417, 424 (BIA 2011) (remanding for the Immigration Judge to apply the third step to determine the alien's knowledge of the victim's age).  However, on petition for review, the Fifth Circuit joined the Third, Fourth, Ninth, and Eleventh Circuits in rejecting the third step in *Silva-Trevino I*. *Silva-Trevino v. Holder*, 742 F.3d 197, 200–01 (5th Cir. 2014); *Olivas-Motta v. Holder*, 746 F.3d 907, 916 (9th Cir. 2013); *Prudencio v. Holder*, 669 F.3d 472, 482 (4th Cir. 2012); *Fajardo v. U.S. Att'y Gen.*, 659 F.3d 1303, 1310 (11th Cir. 2011); *Jean-Louis v. Att'y Gen. of U.S.*, 582 F.3d 462, 473–74 (3d Cir. 2009). In this regard, the Fourth Circuit has stated that the Act "unambiguously requires that 'an adjudicator consider only the conviction itself, and not any underlying conduct,' in determining whether a crime qualifies as one involving moral turpitude."  *Jimenez-Cedillo*, 885 F.3d at 295 (quoting *Prudencio*, 669 F.3d at 482).

In the respondent's case, the permissible documents to consult from the record of conviction did not indicate what he believed as to the age of the person he was communicating with.[3]  Thus, at the time of his conviction in 2015, the respondent pled guilty to a sexual offense under a statute that did not require proof that he knew or should have known the victim's age. *Jimenez-Cedillo*, 885 F.3d at 296.

---

[2]  Under the modified categorical approach, we are permitted to consult "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)" that form the record of conviction.  *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

[3]  Although relevant information about the defendant's knowledge of the victim's age is contained in the statement of probable cause, we do not consider it under the modified categorical approach because it was not incorporated into the respondent's conviction record.

While a number of courts ultimately resolved the question of the framework set forth in *Silva-Trevino I*, they did not address the issues presented in *Matter of Jimenez-Cedillo* regarding the alien's knowledge of the victim's age. Consequently, in that case, we aimed to reconcile what was becoming an absurd result: Congress and the States had implemented laws to make it easier to stop sexual predators who prey on children, but our case law did not take this reality into account.[4] The intent of requiring that a defendant knew or should have known the age of his victim was to ensure due process in the criminal context. However, the courts have consistently found that a statute prohibiting sexual conduct with a very young victim that lacks such a mistake of age defense reflects the public's desire to protect its most vulnerable victims and does not violate due process.[5]

## C. Statutory Rape

A review of similar cases reveals that our decision is in line with other courts that have considered the issue of mistake of age. Historically, one of the few crimes that was excepted from a mens rea requirement was statutory rape. *See Morissette v. United States*, 342 U.S. 246, 251 n.8 (1952) (noting that sexual offenses where "the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent" are exceptions to the longstanding concept that criminal liability requires some showing of intent). It is well settled that statutory rape is a crime involving moral turpitude for immigration purposes. *See, e.g.*, *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994) (per curiam) (citing *Bendel v. Nagle*, 17 F.2d 719, 720 (9th Cir. 1927) (holding that statutory rape "manifestly involves moral turpitude")); *Castle v. INS*, 541 F.2d 1064, 1066–67 (4th Cir. 1976) (per curiam); *Marciano v. INS*, 450 F.2d 1022, 1025 (8th Cir. 1971) (collecting cases).

---

[4]  The outcome of *Matter of Silva-Trevino* would be identical under our decision today. The statute of conviction in that case applied to minors 16 years or younger, while *Jimenez-Cedillo* is limited to victims no older than 15 years.

[5]  "[A] mistake-of-age defense—that is, an affirmative defense that the defendant reasonably believed that his or her victim was not a child at the time of the offense— ensures that individuals will be convicted only if they willfully or knowingly directed sexual conduct towards someone they knew, or reasonably should have known, was a child." *Matter of Silva-Trevino I*, 24 I&N Dec. at 707. Even in more recent times, however, the mistake of age defense is available in only a minority of States. *See* Michael S. Vastine, *From Bristol, to Hollywood, to a Land Far, Far Away: Considering the Immigration Consequences of Statutory Rape*, 7 Rutgers J.L. & Pub. Pol'y 289, 308 n.56 (2010); *see also* Kathleen Houck, *"Mistake of Age" as a Defense?: Looking to Legislative Evidence for the Answer*, 55 Am. Crim. L. Rev. 813, 820 n.63 (2018).

We held that statutory rape was a crime involving moral turpitude in *Matter of Dingena*, 11 I&N Dec. 723 (BIA 1966). In that case, we stated that "mistaking the age of the girl in a statutory rape case is not an innocent mistake of fact" and that if "the female is under the age of consent, the element of mens rea does not enter [into the moral turpitude analysis] because of the very nature of the offense and the interest of society in rendering such females incapable of giving consent." *Id.* at 728. Neither the Attorney General's decision in *Matter of Silva-Trevino I*, 24 I&N Dec. at 707 n.6, nor our decision in *Matter of Silva-Trevino III*, 26 I&N Dec. at 834 n.9, disturbed the well-settled treatment of statutory rape offenses as crimes involving moral turpitude.

Statutory rape cases are instructive because, until 1964, there was no mistake of age defense available for such offenses. *See* Houck, *supra*, at 813. California was the first State to interpret the law to require such a defense in *People v. Hernandez*, 393 P.2d 673, 676 (Cal. 1964) (en banc) (holding that "in the absence of a legislative direction otherwise, a charge of statutory rape is defensible wherein a criminal intent is lacking"). The age of sexual consent in California was 18 years, and the victim, the perpetrator's girlfriend, was 17 years and 9 months at the time of the offense. *Id.* at 674. Distinguishing the controlling case, the court noted that at the time it was decided in 1896, the age of consent was only 14 years and young women were described as "infants." *Id.* at 675.

The court emphasized that it had more recently "moved away from the imposition of criminal sanctions in the absence of culpability where the governing statute, by implication or otherwise, expresses no legislative intent or policy to be served by imposing strict liability." *Id.* Nevertheless, it subsequently recognized the "strong public policy to protect children of tender years" in rejecting the mistake of age defense to a charge of lewd or lascivious conduct with a child under 14 years of age. *People v. Olsen*, 685 P.2d 52, 57 (Cal. 1984) (en banc) (relying on the reasoning of several lower courts and noting that "even the *Hernandez* court recognized this important policy when it made clear that it did not contemplate applying the mistake of age defense in cases where the victim is of 'tender years'" (quoting *Hernandez*, 393 P.2d at 677)).

After *Hernandez*, California amended the law prohibiting statutory rape, now called unlawful sexual intercourse with a person under 18. The statute created separate offenses, which depend on the age of the victim and the age differential between the victim and the perpetrator. *See People v. Scott*, 100 Cal. Rptr. 2d 70, 81 (Cal. Ct. App. 2000) (stating that "the statute distinguishes between the relative ages of the perpetrator and the victim, assigning misdemeanor status to the offense when the ages of the perpetrator and victim are within a three-year range (i.e., teenagers) and felony

status to other situations" (citation omitted)). California's tiered system of punishment reserves the harshest penalties for adults who engage in sexual activity with minors under 16 years of age. *Id.* Such laws recognize the inherent risks that young teenagers and children face when they engage in sexual activities with others outside their peer group who are significantly older than they are. *See* Houck, *supra*, at 814.

Notably, the age of sexual consent is 16 years or older in every State. *See* U.S. Dep't of Health & Human Servs., Ass't Sec'y for Planning and Eval., *Statutory Rape: A Guide to State Laws and Reporting Requirements* (2004), https://aspe.hhs.gov/report/statutory-rape-guide-state-laws-and-reporting -requirements. Although persons of different ages may fall in love, many State legislatures have prohibited any sexual contact unless both persons are over the age of legal consent and of the same peer group. Our holding in *Matter of Jimenez-Cedillo* is in line with this current understanding of the harm done to a child who is enticed to engage in sexual contact by a significantly older person.

## D. Child Pornography

More recently, courts have addressed this harm in the context of child pornography, which the courts have almost universally determined does not allow a mistake of age defense. *See, e.g.*, *United States v. Fletcher*, 634 F.3d 395, 400–01 (7th Cir. 2011) (collecting cases); *United States v. Humphrey*, 608 F.3d 955, 960 (6th Cir. 2010) (collecting cases); *United States v. Malloy*, 568 F.3d 166, 171 (4th Cir. 2009); *United States v. Wilson*, 565 F.3d 1059, 1066–69 (8th Cir. 2009). The Supreme Court has stated that this crime is damaging to the individual child in such a fundamental way that legislatures are given leeway to protect against it. *See New York v. Ferber*, 458 U.S. 747, 757 (1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.").

Likewise, the Supreme Court has determined that solicitation of child pornography is not constitutionally protected activity. *United States v. Williams*, 553 U.S. 285, 307 (2008). Acknowledging the harm to children occurring over the internet, the Court stated, "Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *Id.* However, the Court clarified that "an offer to provide or request to receive virtual child pornography is not prohibited by the statute. A crime is committed only when the speaker believes or intends the listener to believe that the subject of the proposed transaction depicts *real* children." *Id.* at 303. Similarly, a perpetrator commits a crime involving moral turpitude when he solicits a

person who he believes is an actual child for sexual activity on the internet. *Cf. Matter of Olquin-Rufino*, 23 I&N Dec. 896, 898 (BIA 2006) (holding that the offense of possession of child pornography in violation of section 827.071(5) of the Florida Statutes is a crime involving moral turpitude).

## E.  Strict Liability

The courts have also addressed a perpetrator's knowledge of the victim's age in interpreting 18 U.S.C. § 2422(b) (2012), the Federal statute that criminalizes online enticement of children under the age of 18 years for sexual acts, including arranging a meeting for such a purpose.[6] In *United States v. Banker*, 876 F.3d 530, 537 (4th Cir. 2017), the Fourth Circuit discussed whether a conviction under § 2422(b) "requires proof that the defendant knew the victim was a minor."  The court addressed the defendant's argument

> that § 2422(b) must have a different scienter requirement to prevent a conviction based on online communication between an adult who mistakenly believes he is communicating with another adult, but who is in fact communicating with a minor. This hypothetical is simply one variant of the unremarkable observation that if "knowingly" does not modify the age requirement, then a defendant whose conduct satisfies the other elements of the offense will be held strictly liable when the victim is a minor.  But there is nothing inherently unlawful about that result where it is constitutional and consistent with congressional intent.

*Id.* at 539.  Finding no mistake of age defense, the court agreed with the Eleventh Circuit, the only other circuit court to consider the issue, in *United States v. Daniels*, 685 F.3d 1237, 1250 (11th Cir. 2012) (per curiam), which concluded that its holding was intended

> to protect minors—not make conviction more difficult for crimes that affect them. A defendant . . . who lures and encourages young children into these activities does so at his own peril, regardless of what the victim says or how she appears.  He runs the risk that he is dealing with someone who falls within the purview of § 2422(b), thus subjecting him to its enhanced penalties.

---

[6]  According to 18 U.S.C. § 2422(b),

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

*See also United States v. Engle*, 676 F.3d 405, 419 (4th Cir. 2012) ("Section 2422(b) 'was designed to protect children from the act of solicitation itself . . . .'" (quoting *United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011))).

More recently, the Fourth Circuit affirmed the view that sexual solicitation of minors, without actual contact, was sufficiently serious to constitute sexual abuse of a minor for purposes of the aggravated felony provisions in section 101(a)(43)(A) of the Act. *Thompson v. Barr*, 922 F.3d 528 (4th Cir. 2019). The petitioner there argued that sexual abuse of a minor required physical contact, so solicitation would be insufficient for a finding of sexual abuse, but the court disagreed.

> This logic would upend the generic definition and exclude misconduct that few would doubt is abuse of a minor in common parlance. Convictions involving indecent communications with minors over the internet, by phone, or any other remote channel would no longer count. . . .
> We doubt the Supreme Court would adopt such a far-reaching rule without the most careful consideration of its consequences.

*Id.* at 535. The Fourth Circuit's view supports our conclusion that sexual solicitation of young teenagers and children is a crime involving moral turpitude, even if knowledge of the age of the child is a strict liability finding.

In *Matter of Jimenez-Cedillo*, we relied on a Third Circuit case, which held that an indecent assault in violation of Pennsylvania law was a crime involving moral turpitude, even though there was strict liability with regard to the age of the victim. *Mehboob v. U.S. Att'y Gen.*, 549 F.3d 272, 274 (3d Cir. 2008) (involving an adult store owner who touched the breast of a 15-year-old female customer in his store); *see also Moreno v. U.S. Att'y Gen.*, 887 F.3d 160 (3d Cir. 2018) (citing *Mehboob* in a child pornography case). According to the court,

> The absence of a *mens rea* as to a particular element in the statute of conviction does not necessarily connote an absence of moral culpability on the part of the violator. Strict liability morality offenses, like indecent assault . . . , are crimes involving moral turpitude because of the community consensus that such offenses, which are enacted for the protection of the child, are inherently antisocial and depraved. . . .
> Legislatures often remove *mens rea* elements from sex offenses on the basis of community consensus that certain conduct should not be permitted with children under a certain age. . . . But just because actual knowledge of the victim's age is not an element of the crime does not mean that the perpetrator was not motivated by moral turpitude. Indeed, it would seem impossible to commit an offense, such as [indecent assault against a victim under 16 by a perpetrator at least 4 years older,] without violating accepted rules of morality.

*Id.* at 277 (footnote omitted). We continue to find this reasoning persuasive.

The respondent argues that *Mehboob* is inapplicable because the Pennsylvania statute at issue there contained a mistake of age provision, such that a conviction could not be obtained if the perpetrator reasonably believed the victim was above the age of 14 years. However, the statute cited by the respondent permits no mistake of age defense if the minor is less than 14 years old. *See* 18 Pa. Cons. Stat. Ann. § 3102 (2019). The respondent's statute of conviction, section 3-307 of the Maryland Criminal Law, mirrors this provision for minors under 14 years and, for 14- and 15-year-olds, requires that the perpetrator be, at a minimum, 6 years older than the victim. This age gap establishes that, in every case involving a 14- or 15-year-old victim, the perpetrator will be an adult, and the onus is properly on that adult to determine the age of any potential sexual partner.

The respondent charges that our reasoning that there is a "community consensus" against sexual harm to children is "circular." He suggests that all crimes involving moral turpitude are condemned by the community, so there is no reasonable way to separate any particular kind of case for different treatment. We disagree. As the Eighth Circuit has stated:

> In general in this country, infamous crimes are construed as requiring proof of *mens rea*—the "concurrence of an evil-meaning mind with an evil-doing hand"—even when the statutes defining those crimes are silent on the question. In construing criminal statutes that protect children from sexual predators, however, the child's age is a long-established exception to the general rule that proof of *mens rea* is required; "the victim's actual age [is] determinative despite defendant's reasonable belief that the girl had reached the age of consent."

*Gilmour v. Rogerson*, 117 F.3d 368, 370 (8th Cir. 1997) (alteration in original) (citations omitted).

As a deterrent to child sexual predators, the Federal Government and the legislatures in every State have acted to protect the most vulnerable citizens. Although the applicable ages and wording of these statutes may differ slightly, we have set a national standard for immigration cases involving aliens who have committed sexual offenses against victims who are 13 years or younger, or 15 years or younger with a significant age differential—minors who are below the age of consent in every State. Accordingly, we continue to agree with our decision in *Matter of Jimenez-Cedillo*, which we now reaffirm.

## III.  APPLICATION TO THE RESPONDENT

The categorical approach must be employed when analyzing whether a particular offense is a crime involving moral turpitude in the Fourth Circuit.

*Sotnikau v. Lynch*, 846 F.3d 731, 735 (4th Cir. 2017). A crime involving moral turpitude "requires two essential elements: a culpable mental state and reprehensible conduct." *Id.* at 736 (internal quotation mark omitted) (citation omitted). Moral turpitude may inhere where knowing or intentional conduct is an element of an offense. *Id.*

Section 3-324(b) of the Maryland Criminal Law, the statute under which the respondent was convicted, "requires that a violator 'knowingly solicit a minor.'" *Jimenez-Cedillo*, 27 I&N Dec. at 4; *see also Matter of J.M. Acosta*, 27 I&N Dec. 420, 422 (BIA 2018) (stating that knowledge is a culpable mental state). And we have determined that sexual contact with young teenagers and children, or the solicitation to engage in such behavior, is a reprehensible act.

We must also ensure that there is a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Larios–Reyes v. Lynch*, 843 F.3d 146, 152 (4th Cir. 2016) (citation omitted). The respondent points to *Choudry v. State*, 153 A.3d 895, 897 (Md. Ct. Spec. App. 2017), a case involving a man who hired an agent to procure a "prepubescent female child" for sexual relations. Since he used an agent, the court concluded that there was no crime of sexual solicitation of a minor because section 3-324(b) "unambiguously requires that a defendant solicit a minor or a law enforcement officer posing as a minor." *Id.* This case does not demonstrate that the Maryland statute has been applied to conduct that is not morally turpitudinous. Nor has the respondent identified any other case, including his own, that does.[7]

The respondent argues that, even if we reaffirm *Matter of Jimenez-Cedillo*, we could not apply it in the Fourth Circuit because *Ramirez v. Sessions*, 887 F.3d 693, 704–05 (4th Cir. 2018), establishes that a crime involving moral turpitude must have "as an element, an intent to achieve an immoral result," and without a mistake of age defense, no such intent is established. However, sexual crimes involving young children have historically been excepted from this requirement because the intent to achieve the immoral result is inherent in the willful commission of such an act. *Mehboob*, 549 F.3d at 277 (stating that even if knowledge of the victim's age is not an element of the crime, the perpetrator may still be "motivated by moral turpitude"). We therefore conclude again that the respondent's

---

[7] The respondent also cited to a case in which an attorney was disbarred for committing a criminal act because he was accused of violating section 3-324(b) by soliciting sex online from a law enforcement officer who was posing as a teenaged girl. *Att'y Griev. Comm'n v. Greenleaf*, 91 A.3d 1066, 1067 (Md. Ct. App. 2014). Since the attorney was never convicted under that statute, we do not find this case to be relevant to the question whether there is a realistic probability that the statute would be applied to conduct that did not involve moral turpitude. *Id.* at 1071 n.8.

offense in violation of section 3-324(b) of the Maryland Criminal Law is categorically a crime involving moral turpitude. *Cf. Boggala v. Sessions*, 866 F.3d 563, 564, 570 (4th Cir. 2017) (affirming that the offense of "soliciting a child by computer to commit a sex act" under North Carolina law was a crime involving moral turpitude).

However, in light of the Fourth Circuit's statement that our decision in *Matter of Jimenez-Cedillo* represents a change in position and our conclusion that we should apply our current holding prospectively, the respondent is not removable based on a conviction for a crime involving moral turpitude. He is therefore no longer statutorily ineligible for cancellation of removal under section 240A(b)(1)(C) of the Act, so we will remand the record for the Immigration Judge to address whether that relief should be granted.

The Department of Homeland Security has argued that the respondent is ineligible for cancellation of removal as one convicted of a crime of child abuse under section 237(a)(2)(E)(i) of the Act, but because no actual child was ever involved in this case, we cannot make such a finding. *See generally Matter of Velazquez-Herrera*, 24 I&N Dec. 503, 512 (BIA 2008) (holding that a "crime of child abuse" is an offense that "constitutes maltreatment of a child"). However, his conviction for online solicitation of a minor remains an adverse factor in the exercise of discretion. Therefore, the Immigration Judge should make factual findings regarding the relevant favorable and adverse factors, balance these factors, and decide whether the respondent merits a grant of cancellation of removal as a matter of discretion. *See Matter of C-V-T-*, 22 I&N Dec. 7 (BIA 1998) (discussing the standards for exercising discretion for cancellation of removal under section 240A(a) of the Act).

**ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.